**Dale E. LANEAR, Appellant,**

v.

**SAFEWAY GROCERY, Appellee.**

**No. 86–1946.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1987.

Decided April 1, 1988.

Samuel I. McHenry, Kansas City, Mo., for appellant.

David L. Wing, Kansas City, Mo., for appellee.

---

1. The Honorable D. Brook Bartlett, United States District Judge, Western District of Mis-

Before McMILLIAN, ARNOLD and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Dale E. Lanear appeals the District Court's[1] judgment denying his Title VII and 42 U.S.C. § 1981 claims alleging race discrimination by Safeway Stores, Inc. We affirm.

The facts, either as found by the District Court or as they appear from the undisputed evidence, are as follows. Lanear, a black man who had worked for Safeway for nine years, did general clean-up work at a large Safeway warehouse in Kansas City, Kansas. In February 1983 he was on the night shift, from 3:00 p.m. to 11:00 p.m. There were only three employees on the night shift in the warehouse: Lanear, another black janitor named Porter Henson, and a maintenance engineer, Herb Hathaway. Hathaway testified that he is an American Indian, but the District Court noted that "Hathaway's appearance would not suggest that he was an American indian," and found that his superiors at Safeway thought he was white. *Lanear v. Safeway*, No. 84–0652–CV–W–9, Transcript of Trial, Findings of Fact and Conclusions of Law, 266–67. The three employees had no supervision during the night shift.

Lanear, Henson, and Hathaway participated in a ruse to overstate their hours by using a secret, unauthorized time clock to falsify their time cards. Safeway caught wind of the scheme after the night loading supervisor, Ralph Evans, visited the warehouse on the nights of February 23 and 24, well before 11:00 p.m., and found all three employees gone and their cards punched out with times well after 11:00 p.m. In fact, on the second night, February 24, Evans watched Lanear and Hathaway pick up the cards from the time-clock rack at 10:20 p.m.; Lanear replaced them at 10:30 p.m. and left the area. Evans then examined the cards and saw that Lanear, Henson, and Hathaway were punched out for 11:15 p.m. The numerals indicating the

souri.

falsified times were printed in a slightly different style from and in ink lighter than the times punched by the official clock. Evans also found in the rack a fourth time card, belonging to Ed Wilbanks—a white maintenance engineer whose day shift ended when Hathaway's night shift began. Wilbanks had timed in on the official clock on the morning of February 24, but had not punched himself out in the afternoon. However, after Lanear replaced the cards in the rack at 10:30 p.m. that night, Wilbanks's card bore a punch-out time of 3:06 p.m. for February 24. Evans promptly reported these observations to his superiors.

On the following morning, February 25, warehouse manager Art Mingucci, Safeway security investigator George Bolts, and Kenneth Shriver, Safeway's security manager, looked over the time cards of Lanear, Henson, Hathaway, and Wilbanks for the past several weeks for tell-tale evidence of the different numerals and ink. The investigators found no suspicious numerals on Wilbanks's cards (aside from the final punch-out for February 24), and decided not to interview him unless he was implicated by evidence discovered later. The investigators decided to interview the three night-shift workers because of their apparent active participation in a scheme to use an unauthorized time clock to overstate their hours of work.

Mingucci, Bolts, and Shriver interviewed Lanear first, shortly after he arrived at work on February 25. Lanear stated that he understood Safeway's posted policy requiring employees to punch only their own time cards and to use only the designated time clock. Nevertheless, about eight times, Lanear explained, he had taken his time card, and occasionally the cards of other employees, to Hathaway in the engineers' office. There, Hathaway would set an old, partially disassembled time clock ahead one hour. The two then would punch the cards and Lanear would return them to the rack. (When Hathaway heard that Lanear was being interviewed, he immediately hid the bogus time clock in a barrel outside the engineers' office.) When asked if anyone besides Hathaway, Henson, and himself had participated in the scheme, Lanear told the interviewers that no one else was involved. The management team interviewed Henson next. Like Lanear, Henson said that no one besides Lanear, Hathaway, and himself had used the second clock; Henson admitted leaving work before 10:30 p.m. on February 24, although his card said 11:15 p.m. The final interview with Hathaway likewise turned up no evidence of Wilbanks's involvement. In sum, each of the three night-shift employees admitted using the second time clock to falsify their own time cards, and each implicated the other two and no one else. *See infra* at 301 n. 3. The management representatives decided not to interview or discipline Wilbanks. Shortly thereafter, Mingucci gave Lanear, Henson, and Hathaway an ultimatum: resign or be terminated, because they had misused the time clock to misrepresent their hours. Tr. 199. Hathaway resigned; Lanear and Henson were fired. The employees chosen by Safeway to replace Lanear and Henson were both black.

■ Lanear's theory of the case, both in the District Court and in this appeal, is that his discharge was motivated by discriminatory intent because Wilbanks was a similarly situated white employee who received dissimilar treatment. The District Court found that Wilbanks was not similarly situated, and concluded that Lanear had failed to prove intentional discrimination, as required for claims under both Title VII and § 1981. *See Johnson v. Legal Servs. of Ark., Inc.,* 813 F.2d 893, 896 (8th Cir.1987); *Hervey v. City of Little Rock,* 787 F.2d 1223, 1228 n. 3 (8th Cir.1986). Specifically, the District Court rejected Lanear's claims by applying the familiar three-part analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Smith v. Monsanto,* 770 F.2d 719, 722 (8th Cir.1985), *cert. denied,* 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986); *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1253–54 (8th Cir.1981). The District Court's determination that Lanear failed to

prove intentional discrimination is a finding of fact, and hence is subject to the clearly erroneous standard of review. *See* Fed.R. Civ.P. 52(a). If it is "plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

Lanear asserts that the District Court was clearly erroneous in (1) finding that the legitimate reason articulated by Safeway for his discharge was not a mere pretext to disguise discriminatory intent, and (2) making other subsidiary findings of fact. We have carefully reviewed the entire record of the one-day bench trial and are convinced that none of the findings of the District Court is clearly erroneous.[2]

The District Court properly applied the three-part *McDonnell Douglas* formula. First, it found that Lanear had established a prima facie case of discrimination. He is black; he was capable of performing his job; and he was fired. *See Boner v. Board of Comm'rs of Little Rock*, 674 F.2d 693, 696 (8th Cir.1982); *Bunny Bread*, 646 F.2d at 1253. Second, the court found that Safeway had met its burden of producing sufficient evidence of a legitimate, non-discriminatory reason for firing Lanear, based on his misuse of the time clock to misrepresent his hours. Although Lanear claimed that he never had misstated his hours, and that he punched out early on the second clock only because the designated time clock sometimes malfunctioned or was poorly lighted at the end of his shift, the District Court found: "First, the regular time clock was functioning properly.... Second, the time clock area was sufficiently

lighted to be used when the working lights were out. Three, therefore, what purpose was there for using the second time clock other than to misrepresent the time plaintiff ... actually left work." Tr. 275.

■ The principal dispute arises over the third and final step in the *McDonnell Douglas* analysis—Lanear's assertion that the time-clock infraction was a mere pretext for discriminatory discharge. Lanear argues that Wilbanks, the white day-shift engineer whose February 24 time card Lanear falsified, was a similarly situated employee who received favorable treatment because of his race. Lanear's claim of disparate treatment must rest on proof that he and Wilbanks were "similarly situated in all relevant respects." *Smith*, 770 F.2d at 723 (citations omitted). It is not up to the employer to prove dissimilarity. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94; *Bunny Bread*, 646 F.2d at 1254. Plaintiff must establish that the other employee's acts were of "comparable seriousness" to his own infraction. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. Thus, Lanear needed to prove that Wilbanks knowingly participated in the misuse of the unauthorized time clock to misrepresent the hours he worked—the same violation for which Lanear was fired. Lanear established only that he had falsified Wilbanks's card, along with his own, on the night of February 24. Evidence that Lanear misused Wilbanks's time card does not prove that Wilbanks misused the time clock, or that he knew of the misuse of his card. We have carefully reviewed the evidence, and we agree with the District Court that Lanear failed to prove that Wilbanks was similarly situated.[3]

---

**2.** Lanear apparently did not make a demand for trial by jury, which he would have been entitled to have on his claim for legal relief under § 1981. In any event, he has raised no issue in this regard.

**3.** Although both Lanear and Hathaway implicated Wilbanks in their testimony and claimed to have mentioned Wilbanks during their interviews on February 25, the District Court found more credible the testimony of the three Safeway investigators, who stated that neither em-

ployee had implicated Wilbanks in any way. We must give great deference "to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a). It is up to the district court, not the court of appeals, to decide which party's explanation of the employer's motive is more believable. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed. 2d 403 (1983).

■ Lanear argues that Safeway manifested its discriminatory intent by not even interviewing Wilbanks. However, the District Court specifically found several legitimate, non-discriminatory reasons why the Safeway managers decided to interview the three employees from the night shift, and not Wilbanks. Wilbanks's time cards from earlier weeks revealed no signs of tampering. Also, the day shift was very busy, unlike Lanear's lonely night shift, and it would have been difficult for Wilbanks to slip out early. There had been no complaints of his leaving early. The District Court found "no verification that Wilbanks misused the time clock as there was with the other three employees." Tr. 277. Evans, an eyewitness, saw Lanear and Hathaway falsify their time cards; the investigators did not interview Henson until after his complicity in the scheme was confirmed by Lanear. As the District Court observed, "[h]indsight suggests that an interview with Wilbanks would have been appropriate...." Tr. 277–78. But, as the District Court found, Safeway's failure to do so, in these circumstances, does not show discriminatory intent.

■ Additionally, the District Court found that Lanear's assertions of discrimination were undercut by Safeway's identical treatment of Hathaway, a similarly situated employee whom all the managers believed to be white. Furthermore, Safeway's decision to replace Lanear and Henson with black employees is evidence of lack of discriminatory intent. *See Furnco Const. Co. v. Waters*, 438 U.S. 567, 580, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978) (court may consider racial mix of the employer's work force when trying to determine his motivation).

Lanear argues that the District Court was clearly erroneous in certain of its subsidiary findings of fact. Having carefully examined the record, we conclude that the challenged findings are not clearly erroneous and that the issues do not merit further discussion. The judgment of the District Court is affirmed.