Elouise L. HAYES, Appellee,

v.

INVESCO, INC., Appellant.

No. 89–2031EA.

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1990.

Decided July 11, 1990.

Stuart P. Miller, Little Rock, Ark., for appellant.

Horace A. Walker, Little Rock, Ark., for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and GUNN,[*] District Judge.

MAGILL, Circuit Judge.

Queen Robinson, a black woman and the chief officer of Invesco, Inc.'s[1] vocational training division, fired Elouise L. Hayes, also a black woman, from her position as a clinical instructor of student nurses. Hayes brought suit[2] pursuant to 42 U.S.C.

---

[*] THE HONORABLE GEORGE F. GUNN, JR., United States District Judge for the Eastern District of Missouri, sitting by designation.

[1] Invesco filed for protection under Chapter 11 of the Bankruptcy Code on March 7, 1990, nine days before this case was originally scheduled for oral argument. The appeal was subsequently submitted without oral argument.

[2] On March 7, 1987, the Equal Employment Opportunity Commission issued Hayes a notice of right to sue. This notice was issued because the Commission dismissed her charge against Invesco, finding that "[n]o reasonable cause was found to believe that the allegations made in [her] charge [were] true...." Appellant's Appendix at 46.

§§ 2000e–5 and 1981 alleging that Robinson fired her because she was black. Invesco claims that Hayes' poor job performance and unprofessional behavior, which precipitated the actual and threatened loss of four clinical job sites, justified the termination.

After a two-day trial, the district court found that Hayes had established a prima facie case of discrimination. Furthermore, without directly ascertaining whether Invesco had established some legitimate nondiscriminatory reason supporting Hayes' discharge, the court found that any such reason would have been pretextual. The district court awarded three years' backpay and one year frontpay, but denied reinstatement. The court also awarded attorneys' fees and costs but refused to impose punitive damages finding no malice on Invesco's part.

Invesco appeals the entry of judgment in favor of Hayes, arguing that several of the district court's factual findings underpinning its conclusion that Invesco discriminated against Hayes in terminating her are clearly erroneous. Specifically, Invesco argues that the district court committed clear error in: (1) its determination that Hayes had established a prima facie case of discrimination; (2) its finding of disparate treatment; (3) its interpretation of the facts surrounding its conclusion that Hayes and a white employee, who was not terminated, were similarly situated; and (4) its holding that Invesco's reason for terminating Hayes was pretextual. Because we hold clearly erroneous the district court's conclusion that Hayes and the white employee were similarly situated, we reverse. In so doing, we also hold that Hayes did not meet her burden of proving that Invesco's legitimate nondiscriminatory reason for terminating her was pretextual.[3] We therefore remand for a determination of whether, given our contrary rulings on pretext, Invesco intentionally discriminated against Hayes.

## I.

Invesco is a corporation which operates a junior college which provides vocational training for nursing aides in both a classroom and clinical setting. Nineteen of the vocational division's twenty-two employees are black. Classroom training consists of lectures about proper nursing methods. Clinical training, on the other hand, involves working directly with patients at sites established by Invesco.

On May 11, 1983, Invesco hired Hayes, a black woman, as an instructor in the classroom. Later that year, Invesco promoted Hayes to the position of a clinical instruc-

---

**3.** Appellee's brief is both unhelpful and disturbing for several reasons. First, we warn appellee's counsel that as an officer of the court, his duty is to provide in his statement of facts only facts, not argument. While facts can be so written as to be persuasive in favor of one's client, argumentative language is not acceptable. *See Markowitz & Co. v. Toledo Metro. Hous.,* 608 F.2d 699, 704 (6th Cir.1979). Twenty-eight pages of appellee's brief were devoted to the "facts." Because counsel mixed facts and argument, it was nearly impossible for us to identify the facts from a reading of his brief.

Second, when drafting a brief, counsel must not omit information the absence of which is misleading to the court. For example, on numerous occasions, appellee's counsel charged Invesco and its counsel with deliberately concealing information in certain files in order to "lead the district court to believe that none of [the] white employees had received any complaints against them." *See, e.g.,* Appellee's Brief at 9, 18. Appellee fails to mention that Invesco and its counsel had a logical explanation for why the information was not in the file or that

the district court refused to impose sanctions. We are not saying that appellee cannot argue that appellant deliberately concealed evidence, but we are saying that it is inappropriate to paint a picture so one-sided that it is misleading.

Finally, when drafting a brief, it is important for counsel to chose his words carefully and to charge opposing counsel with misconduct only where truly warranted. On numerous occasions appellee's brief charges opposing counsel with misconduct or with misleading trial strategy without anything of substance to support the allegation. For example, counsel argues that Invesco shifted positions claiming "for the first time on appeal that Hayes was terminated for the loss of nursing home sites or *threatened loss of nursing home sites.*" *Id.* at 16 (emphasis in original). As we explain later, *infra* note 7, this allegation has no basis whatsoever in fact. Furthermore, counsel charges Invesco and its counsel with deliberately mischaracterizing "the evidence produced at trial and *all* the credible testimony...." *Id.* at 33 (emphasis added). This accusation also has no basis in fact.

tor. As such, she was responsible for supervising and grading the nursing aide students at the clinical sites and coordinating with the nursing home administrator the students' day-to-day work schedules and responsibilities.

During Hayes' employment, Invesco received numerous complaints regarding her job performance which were noted in her employee file. Some of the complaints charged Hayes with unprofessional conduct, numerous excessive personal telephone calls, not being at the clinical site during working hours, giving a student credit for required material not completed, and improper supervision of students. Hayes did receive a few positive reports that were placed in her file. For example, the clinic manager of the East Little Rock Health Clinic described Hayes as a "capable instructor." Appellant's Appendix at 56.

As a clinical instructor, Hayes worked at several nursing homes. The circumstances surrounding Hayes' involvement with four of these nursing homes are at issue in this appeal. In November 1984, the Williamsburg Nursing Center, at which Hayes was the clinical instructor, cancelled its contract with Invesco. The Center gave two reasons for the cancellation: (1) the students were a disruptive influence and totally unhelpful; and (2) the students were unsupervised and did not fully understand their responsibilities. Although disputed by Hayes, the district court found that Robinson discussed the situation with Hayes and advised her that if she caused Invesco to lose another site, she would be terminated. *Hayes v. Invesco*, No. LR–C–87–412, Tr. at 6 (E.D.Ark., June 2, 1989).

In December 1985, Jean's Nursing Home, at which Hayes was the instructor, also cancelled its contract with Invesco as a clinical site. The nursing home gave two reasons for its action: (1) the students were more of a liability than an asset; and (2) Hayes' attitude.

In January 1986, Briarwood Nursing Center notified Robinson that "Briarwood is open to trying this student placement one more time *on the condition that* a new instructor come and work as an aide." Briarwood letter to Robinson, January 31, 1986 (emphasis added). In response to Briarwood's communication, Invesco transferred Hayes to Rose Care Nursing Home.

On March 17, 1986, Robinson received a phone call from an administrator at the Rose Care Nursing Home who informed her that Rose Care would continue its contract with Invesco only if Hayes were replaced by a new instructor. Robinson testified that there were no classroom positions available for Hayes to which she could have been transferred. Therefore, after informing Hayes of the complaint and threatened cancellation of the site, Robinson terminated her.

## II.

In order to prevail on her disparate treatment claim, Hayes must first establish a prima facie case. To do so, she must demonstrate by a preponderance of the evidence that (1) she is a member of a protected class; (2) she was capable of performing her job satisfactorily; and (3) she was discharged. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1307 (8th Cir.); *cert. denied*, 469 U.S. 1041, 105 S.Ct. 525, 83 L.Ed.2d 413 (1984). Once a prima facie case has been established, Invesco has the burden to articulate some legitimate nondiscriminatory reason for the discharge. This burden is not onerous. Invesco's burden is satisfied if it produces evidence that Hayes was terminated for a legitimate nondiscriminatory reason. Invesco need not demonstrate such reasons by a preponderance of the evidence. "It is sufficient if [Invesco's] evidence raises a genuine issue of fact as to whether it discriminated against [Hayes]. To accomplish this, [Invesco] must clearly set forth, through the introduction of admissible evidence, the reasons for [Hayes'] rejection." *See Burdine*, 450 U.S. at 253, 254–55, 101 S.Ct. at 1094. The burden of production then shifts back to Hayes to demonstrate by a preponderance of the evidence that

the reasons given by Invesco were not its true reasons, but were mere pretext. *See id.* at 253, 101 S.Ct. at 1093; *Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir.1988). Hayes' claim of pretext rests on proof that she and Teel, the white employee who was not terminated, were " 'similarly situated in all relevant respects.' " *Id.* (quoting *Smith v. Monsanto*, 770 F.2d 719, 723 (8th Cir.1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986)). It is not up to Invesco to prove dissimilarity. Hayes must establish that Teel's acts were of " 'comparable seriousness' " to her own infraction. *Id.*

Invesco argues that several of the district court's factual findings supporting its conclusion that Invesco's termination of Hayes was discriminatory are clearly erroneous. A "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). We cannot reverse a district court's factual findings merely because we are convinced that we "would have decided the case differently." *Bessemer City*, 470 U.S. at 573, 105 S.Ct. at 1511.

The district court's finding of pretext was based on its conclusion that "at least one white employee [Teel] ... was similarly situated in the circumstance in which [Hayes] found herself when she was terminated" yet Teel was not terminated. *Hayes v. Invesco*, No. LR–C–87–412, at 4. This conclusion stems almost exclusively from the district court's finding that four nursing homes at which Hayes was the clinical instructor did not actually withdraw or threaten to withdraw completely from their relationship with Invesco.[4] This finding led the court to compare only the actual complaints lodged against Hayes and Teel and ignore the evidence concerning the threatened cancellation of the sites. By refusing to take into account the actual or threatened loss of four clinical sites that resulted from Hayes' poor performance, the district court easily concluded that Hayes and Teel are similarly situated and that the reason offered by Invesco to justify Hayes' termination was mere pretext.[5]

We conclude that the district court's finding that Hayes and Teel are similarly situated is clearly erroneous because the district court failed to consider and misinterpreted crucial evidence, which when considered in the context of all the evidence, leaves us with the definite and firm conviction that a mistake has been committed. Initially, the court failed to consider undisputed evidence that Invesco had actually lost two sites because of Hayes' actions. Furthermore, the court misinterpreted evidence regarding the threatened cancellation of two sites and therefore failed to take into account that Invesco had been threatened with the loss of these sites because of Hayes' conduct. Similarly, the court failed to consider that Invesco neither lost a clinical site nor was ever threatened with the loss of one as a result of Teel's

4. The district court stated:

But upon further cross examination Mr. Walker [plaintiff's attorney] brought out, at least Ms. Robinson admitted, that really the only thing that Gene's Nursing Home requested was that there be a change in instructors, remove Ms. Hayes, that there were not be a termination of the relationship between Gene's Nursing Home and Invesco, Inc.

It was also brought out that Rose Care took the same position.... So that's different from a loss of ... those nursing homes.... [Rose Care and Gene's] were willing to continue that relationship as a clinical site for the students of Invesco if there was a change in the instructorship. So, that sheds a different light on the situation. The Court was led to believe that there were four nursing homes who had withdrawn or threatened to withdraw completely.

*Hayes v. Invesco*, No. LR–C–87–412, at 7–8.

5. There is ample evidence in the record to support the district court's conclusion that most of the complaints aimed against Hayes and Teel were similar in nature and substance. In fact, there is even evidence to support the district court's finding that overall there were a few more complaints filed against Teel than Hayes. We do note, however, that like Hayes, Teel also had several positive reports in her file.

actions. Finally, the district court failed to consider the undisputed testimony that there were no classroom positions available to which Hayes could have been transferred after the threatened loss of the Rose Care clinical site, but when Teel was transferred there was such a position available. Because we hold that the factual findings underlying the court's conclusion that Teel and Hayes were similarly situated are clearly erroneous and Invesco has met its burden of articulating a legitimate nondiscriminatory reason for Hayes' discharge, we reverse. Therefore, we need not reach the question of whether Hayes has met her burden of establishing a prima facie case of disparate treatment.

Invesco claims it lost two clinical sites at least partly as a result of Hayes' actions. The record clearly supports Invesco's claim and Hayes does not even once dispute this claim in her brief. Furthermore, the district court did not directly consider this undisputed evidence in shaping its ruling.[6] This evidence clearly distinguishes Hayes from Teel. Hayes contributed to the loss of two sites; Teel did not. The court's failure to consider this important evidence leaves us with the firm conviction that a mistake has been committed.

Despite losing these two clinical sites, Invesco gave Hayes two more opportunities to redeem herself. After Hayes was transferred to Briarwood Nursing Center, the Briarwood administrator informed Invesco that it would only continue its relationship with Invesco "on the condition that a new instructor come and work...." Appellant's Appendix at 31–32. Hayes was then transferred to Rose Care Nursing Home. Shortly thereafter, Rose Care informed Invesco that it would continue its relationship with Invesco only if a new instructor were brought in to replace Hayes. Despite this undisputed evidence, the district court concluded that neither Rose Care nor Briarwood threatened to withdraw completely as Invesco had allegedly led the court to believe.[7] *Hayes v. Invesco*, No. LR–C–87–412, at 6–8. This conclusion is clearly erroneous. Although the district court correctly concluded that Rose Care and Briarwood desired to continue their relationship with Invesco, both nursing homes informed Invesco in clear terms that they would only continue their relationship if Hayes were replaced. A conditional promise to continue a relationship clearly constitutes a threat to discontinue the relationship if the condition is not fulfilled. The district court's findings to the contrary are clearly erroneous and are not supported by the record. Neither nursing home would have continued a relationship with Invesco if Hayes had continued as the instructor. It was the threatened loss of Rose Care that finally "broke the camel's back" and led to Hayes' termination. *Id.* at 6.

While the complaints lodged against Teel were at least as bad as those lodged against Hayes, there is nothing in the record besides Hayes' bare allegations which suggests that any institution either severed or threatened to sever its relationship with Invesco as a result of Teel's actions. Hayes alleges and the district court notes that Teel was "removed" from Trinity Nursing Home as a result of a complaint lodged against her. *Id.* at 9. However, during her entire time at Trinity there was not even one complaint lodged against Teel. The only complaint was recorded during Robinson's conversation with Trinity director of nursing several weeks *after* Teel had left the Trinity institution.[8]

6. Both Hayes in her brief and the court in its ruling focus on Invesco's claim that two sites threatened to sever their relationship with it.

7. Hayes argues that Invesco is shifting strategy on appeal, arguing for the first time that two institutions threatened to withdraw. At trial, Hayes maintains Invesco only argued that four institutions had completely withdrawn. Hayes' argument is without merit. After a thorough review of the record, we find numerous instances where Invesco put on evidence which demonstrated two institutions had threatened to withdraw as a result of Hayes' actions. In fact, even the district court in its ruling acknowledges Invesco's arguments that two institutions had threatened to withdraw.

8. We also note the record reflects that any investigation Robinson conducted regarding the complaint against Teel took place after Teel had been transferred to a different institution. To

Therefore, the complaint could not possibly have provided a basis for Teel's alleged "removal." Furthermore, there is nothing in the record which indicates that Trinity either threatened Invesco with cancellation or actually terminated the site because of Teel's conduct. Teel and the students had been pulled from the Trinity site because one of the students allegedly kidnapped and raped a patient. The uproar which resulted from the student's actions led the director of Trinity to conclude that it would be best if Invesco left the site.

Hayes also alleges that Teel was "removed" from the Hillhaven Nursing Home.[9] There is no evidence in the record besides Teel's bare allegation to support this assertion. Robinson testified that the Hillhaven site was terminated because Invesco had only been assigned the spring months for training. Invesco never had a long-standing arrangement with Hillhaven. After Invesco's time had expired, Hillhaven became the site for the students from Baptist Nursing Center and the Medical Center. However, even assuming Teel had been removed from Hillhaven, at no time does the district court conclude that Hillhaven discontinued or threatened to discontinue its relationship with Invesco because of any of Teel's actions. This alone distinguishes Teel from Hayes.

Therefore, while Hayes was responsible for the loss of two clinical sites and the threatened loss of two more, Teel was not responsible for the loss or the threatened loss of any site. This fact makes the district court's finding that the two were similarly situated clearly erroneous.[10] Therefore, we reverse and remand for a determination of whether, in light of this opinion, Invesco intentionally discriminated against Hayes. *See United States Postal Service v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *Wells v. Gotfredson Motor Co.*, 709 F.2d 493, 496 & n. 1 (8th Cir.1983).

### III.

In conclusion, we hold that the district court's crucial factual findings underpinning its conclusion that Hayes and Teel were similarly situated are clearly erroneous. The district court failed to consider or misinterpreted important evidence in the record which compelled the conclusion that the two employees were not similarly situated. Therefore, the court's finding of pretext is in error. Although Invesco has articulated a legitimate nondiscriminatory reason for Hayes' dismissal,[11] we reverse the judgment entered against Invesco and remand for an ultimate finding of whether

the extent the district court found the investigation took place before the transfer, this finding is wholly unsupported by the record. Therefore, Hayes' argument that her case was not investigated thoroughly until after she was terminated does not identify any disparate treatment.

**9.** Hayes argues that the district court definitively found that Teel was "removed" from Trinity. Appellee's Brief at 37. We disagree. The district court refused to decide whether she was removed or brought back because of the expiration of the contract apparently because it was not important to its conclusion. *Hayes v. Invesco*, No. LR–C–87–412, at 15 ("Ms. Teel was removed from the nursing home and given a teaching assignment *or brought back* to the nursing or to Invesco and assigned another job") (emphasis added).

**10.** Because we have already concluded that Hayes and Teel were not similarly situated, we need not examine the effect of the district

court's failure to mention the undisputed evidence that there was no classroom position available for Hayes to which she could have been transferred when Rose Care threatened to sever its relationship with Invesco, but there was a classroom position available at the time Teel left Trinity.

**11.** Invesco not only explained what it had done but produced evidence to show it terminated Hayes not only because of all the complaints lodged against her but most importantly because she had lost two sites for Invesco and had caused Invesco to be threatened with the loss of two additional sites. Furthermore, there were no classroom positions available to which Hayes could be transferred. These reasons were articulated by Invesco below. Invesco met its burden. *See Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094. We also note that in her brief, Hayes does not dispute that Invesco's stated justification for her termination was legitimate and nondiscriminatory. Instead, she argues the stated reason constituted mere pretext.