UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 95-1929

PATRICK PERKINS,

Plaintiff, Appellant,

v.

BRIGHAM & WOMEN'S HOSPITAL
and
GEORGE H. KAYE,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge] 



Before

Selya, Boudin and Lynch,

Circuit Judges. 



Daniel S. Sharp, with whom Elaine Whitfield Sharp, Barbara 
C. Johnson, and Whitfield Sharp & Sharp were on brief, for 
appellant.
Richard P. Ward, with whom Bonnie B. Edwards and Ropes & 
Gray were on brief, for appellees. 



March 21, 1996



SELYA, Circuit Judge. In this case, Brigham & Women's SELYA, Circuit Judge. 

Hospital (the Hospital) allegedly fired plaintiff-appellant

Patrick Perkins, an African-American male, because it discovered

that he had engaged in a despicable pattern of work-related

sexual harassment over a protracted period of time. Apparently

convinced that the best defense is a good offense, Perkins sued.

Unimpressed by this effort to turn the tables, the district court

rejected Perkins' claims of race-based discrimination at the

summary judgment stage. On appeal, Perkins accuses the court of

straying down the wrong path. Undertaking de novo review, see 

Smith v. F.W. Morse & Co., F.3d , (1st Cir. 1996) [No. 

95-1556, slip op. at 29], we find no navigational error.

I. BACKGROUND I. BACKGROUND

We depict the facts (which are by any standard

unpleasant) in the light least hostile to the appellant,

consistent with record substantiation. See, e.g., Garside v. 

Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). In this 

process, we weed out "conclusory allegations, improbable

inferences, and unsupported speculation." Medina-Munoz v. R.J. 

Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). 

The appellant worked at the Hospital as a patient care

assistant. He garnered generally favorable performance

evaluations over a ten-year span, but his record was marred by

several instances of misconduct (which led to warnings and/or

suspensions). In mid-1990 a more serious incident occurred: in

the dead of night, the appellant invaded a restricted lounge

2

where two female radiology technicians were sleeping between

cases. One woman claimed that, upon awakening, she discovered

the appellant staring at her from the foot of her bed. The

technicians reported the occurrence and informed Hospital

officials that the appellant had made sexual overtures to each of

them on prior occasions.1 A supervisor added background

information, revealing that the appellant habitually uttered

"flirtatious statements."

The Hospital moved to terminate the appellant's

employment in the wake of this episode but the in-house Grievance

Review Board (the Board) reduced the proposed penalty to a four-

week suspension without pay. Withal, the Board acknowledged the

appellant's unfortunate penchant for making salacious comments to

female employees, and advocated "appropriate disciplinary action"

if this meretricious behavior continued.

In November of 1991 roughly seventeen months after

his nocturnal caper in the technicians' lounge the appellant

telephoned a nurse while she was participating in a surgical

procedure and loudly warned her not to call him "Pat." There was

a history leading up to this call, and the nurse demanded an

investigation of what she described as the appellant's

"harassment" of her. Perkins' supervisor, an African-American

 

1According to one woman, Perkins often asked her out on
dates, and in one instance, when she replied that she was
married, he retorted that "I don't want your husband, I want
you." The other woman revealed that when, in the course of
Perkins' amorous pursuit, she mentioned her gravidity, he
responded: "Pregnant women turn me on."

3

woman, suspended him pending further review of the incident.

George Kaye, the Hospital's vice-president for human

resources, considered the nurse's complaint in conjunction with

reports from operating room managers that the appellant continued

to engage in inappropriate sexual banter and innuendo. Kaye

retained Nancy Avery, an independent social worker, to conduct an

inquiry. The Hospital adopted an investigatory protocol

calculated to provide a confidential forum in which female

employees could safely discuss their experiences vis-a-vis the

appellant.

Avery's report was damning. It recounted numerous

episodes of unacceptable behavior involving the appellant and

myriad female employees. It would serve no useful purpose to

take a complete inventory of these tawdry vignettes. Suffice it

to say that the list includes instances in which the appellant

described his sexual prowess in explicit detail, boasted about

the length of his penis, exposed himself, patted a female

employee's buttocks, and proposed a menage-a-trois. The report

also memorialized the appellant's threats to retaliate against

women who declined his advances by, for example, warning that he

would slash their tires (and, in one case, that he would not be

averse to attacking a woman in a garage).

Kaye concluded that the appellant had engaged in the

misconduct described by Avery, and cashiered him effective

February 7, 1992. This time the Board, after hearing the

appellant's denial of the allegations, upheld his ouster.

4

The appellant brought suit in a Massachusetts state

court charging inter alia racial discrimination.2 The Hospital 

removed the case to a federal forum. Discovery lasted for over a

year. When the Hospital thereafter requested summary judgment,

the district court obliged. Overriding Perkins' objection, the

court ruled as a matter of law that, although he had made out a

prima facie case of racial discrimination under the McDonnell 

Douglas burden-shifting model, see McDonnell Douglas Corp. v. 

Green, 411 U.S. 792, 802 (1973), the Hospital had produced 

evidence of a legitimate, nondiscriminatory justification for the

discharge, namely, the extensive misconduct related in Avery's

report, sufficient to meet its burden of production under that

model; that the record revealed no evidence probative of pretext;

and that, therefore, no rational factfinder could conclude that

the Hospital dismissed Perkins on account of his race. See 

Perkins v. Brigham & Women's Hosp., Civ. No. 93-11701- DPW (D. 

Mass. July 31, 1995) (D. Ct. Op.).

In this appeal, Perkins abandons several of his

original initiatives and concentrates his fire on the lower

court's rejection of the race discrimination claims. He

maintains that the court allowed brevis disposition on those 

claims only because it overlooked, misconceived, and

mischaracterized the relevant evidence, and then applied the

 

2The appellant named both Kaye and the Hospital as
defendants. Because Kaye's liability (if any) could not
conceivably be greater than the Hospital's, we treat the case as
if the Hospital were the sole defendant and appellee.

5

wrong analytic framework.

II. ANALYSIS II. ANALYSIS

We begin our discussion of the merits by noting that,

contrary to the appellant's position, there is no insurmountable

obstacle blocking the use of Fed. R. Civ. P. 56 in the

circumstances of this case. The function of summary judgment is

"to pierce the boilerplate of the pleadings and assay the

parties' proof in order to determine whether trial is actually

required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 

(1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993). Here, the 

record, fairly read, contains no sign that the district court

overlooked, misconceived, or mischaracterized the evidence. To

the contrary, as the district court concluded, the record

discloses no genuine issue as to any material event; and the

undisputed facts, taken most favorably to the appellant, confirm

that the Hospital is entitled to judgment as a matter of law.

See, e.g., McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 

(1st Cir. 1995) (collecting cases describing summary judgment

standard); see also Medina-Munoz, 896 F.2d at 8 (discussing 

propriety of summary judgment even when "elusive concepts such as

motive or intent" are at issue).

We give credit where credit is due. The district

court's opinion is both meticulous and scholarly. It treats

every claim and item of evidence, and closes virtually every

avenue that Perkins tries to travel on appeal. Because that is

6

so, we resist the temptation to transpose into our own words what

has already been well expressed, preferring instead to affirm the

judgment essentially on the basis of the opinion below. We pause

only to add punctuation in a few spots.3

A A

The appellant's principal complaint is that the

district court analyzed his race discrimination claims under the

McDonnell Douglas framework. He bases this complaint on his 

assumption that the record contains evidence sufficient to

warrant deployment of the somewhat different framework

constructed by the Court in Price Waterhouse Co. v. Hopkins, 490 

U.S. 228, 258 (1989) (plurality op.).4 When, as now, a

plaintiff alleges disparate treatment, he ordinarily has the

burden of proving that the defendant took the adverse employment

action (here, dismissal) because of a protected trait (here,

race). The Price Waterhouse framework, where applicable, shifts 

the burden of persuasion to the employer.

 

3We think it is at least arguable that the Civil Rights Act
of 1991, Pub. L. 102-166, 102, 105 Stat. 1071 (1991) (codified
at 42 U.S.C. 2000e-2000e-16), applies in this case. But
neither party cited this statute in the district court; that
court did not refer to it in the opinion below; and the parties
ignore it in their appellate briefs. Given this background, we
do not base our decision on the 1991 Act (but we note that, if we
were to apply it, the result that we reach in this appeal would
not be affected). By like token, given the circumstances of this
case, we see no need to differentiate between the appellant's
parallel claims of race-based discrimination under federal and
state law, respectively.

4The appellant does not contend that the district court
erred in its performance of the McDonnell Douglas analysis, but, 
rather, that the analysis should not have been performed at all.

7

For present purposes, we need not explore the

conditions under which Price Waterhouse might apply. The shift 

in the burden of persuasion contemplated by Price Waterhouse 

invariably depends upon a plaintiff's ability to produce or

proffer evidence of the employer's discriminatory motive for the

adverse job action that goes beyond the simple prima facie case

showing needed to invoke McDonnell Douglas (which, when made, 

requires the employer to provide but not prove an

explanation). See, e.g., Fields v. Clark Univ., 966 F.2d 49, 51- 

52 (1st Cir. 1992), cert. denied, 113 S. Ct. 976 (1993); Jackson 

v. Harvard Univ., 900 F.2d 464, 467 (1st Cir.), cert. denied, 498 

U.S, 848 (1990).

Courts are in some disarray as to the type and kind of

evidence that is sufficient to bring the Price Waterhouse 

framework into play.5 Compare Troupe v. May Dept. Stores Co., 

20 F.3d 734, 738 (7th Cir. 1994) with Ostrowski v. Atlantic Mut. 

Ins. Cos., 968 F.2d 171, 182 (2d Cir. 1992). In this case, 

however, there is no reason to essay fine distinctions or seek to

clarify the Price Waterhouse standard. The evidence as a whole 

simply will not support a reasonable inference that the Hospital

discharged Perkins because it harbored an animus against him as

an African-American. The extensive, point-by-point discussion of

the proof in Judge Woodlock's detailed opinion renders further

 

5The Civil Rights Act of 1991, see supra note 3, does not 
supply a ready means of resolving this disagreement. See Tyler 
v. Bethlehem Steel Corp., 958 F.2d 1176, 1182 (2d Cir.), cert. 
denied, 506 U.S. 826 (1992). 

8

analysis on our part supererogatory. Because we find in this

record nothing remotely resembling probative evidence of a race-

based animus, the appellant's claim fails.

B B

The appellant attacks the lower court's reliance on

affidavits supplied by three female employees that contain lurid

firsthand accounts of his unsavory conduct. The court considered

these affidavits in determining that the Hospital had advanced a

nondiscriminatory rationale for its actions. See D. Ct. Op. at 

32. The appellant reasons that, because the affidavits were

unavailable to the Hospital at the time it discharged him, the

court could not mull them in analyzing the Hospital's motivation.

This anfractuous reasoning distorts the applicable legal rule.

It is true that an employer's proffered justification

must be based on information that it knew and relied upon at the

time it decided to take the adverse employment action. See 

McKennon v. Nashville Banner Pub. Co., 115 S. Ct. 879, 885 (1995) 

(explaining that because an employee's misconduct was not

discovered until after her discharge, the "employer could not

have been motivated by knowledge it did not have and it [could

not] claim that the employee was fired for the nondiscriminatory

reason"); Sabree v. United Bhd. of Carpenters, 921 F.2d 396, 403 

(1st Cir. 1990) (similar). That is to say, an employer cannot

avoid liability in a discrimination case by exploiting a weakness

in an employee's credentials or performance that was not known to

the employer at the time of the adverse employment action (and

9

that, therefore, could not have figured in the decisional

calculus).

This rule is inapposite in the case at bar. Though the

challenged affidavits did not exist when the Hospital handed the

appellant his walking papers, the information that they contained

was known to and fully absorbed by the Hospital at the time it

fired Perkins. The affiants had reported their encounters with

the appellant to Avery, their stories were embodied in her

report, and the relevant information was factored into the

Hospital's decisional process. Consequently, the court below did

not err in considering the affidavits.

C C

The district court rejected the appellant's attempt to

show intentional discrimination by comparing his treatment at the

Hospital's hands with the treatment accorded to a Caucasian

clinical supervisor who was also terminated for harassing female

co-workers. See D. Ct. Op. at 38-42. Perkins assigns error. We 

discern none.

A claim of disparate treatment based on comparative

evidence must rest on proof that the proposed analogue is

similarly situated in material respects. See Morgan v. Harris 

Trust & Savs. Bank, 867 F.2d 1023, 1026 (7th Cir. 1989); Lanear 

v. Safeway Grocery, 843 F.2d 298, 301 (8th Cir. 1988). 

Accordingly, the proponent of the evidence must show that the

individuals with whom he seeks to be compared have "engaged in

the same conduct without such differentiating or mitigating

10

circumstances that would distinguish their conduct or the

employer's treatment of them for it." Mitchell v. Toledo Hosp., 

964 F.2d 577, 582 (6th Cir. 1992). The test is whether a

"prudent person, looking objectively at the incidents, would

think them roughly equivalent and the protagonists similarly

situated." Dartmouth Review v. Dartmouth College, 889 F.2d 13, 

19 (1st Cir. 1989). While an exact correlation is not necessary,

the proponent must demonstrate that the cases are "fair

congeners." Id. at 19. 

In this instance, Judge Woodlock's opinion illustrates

beyond hope of contradiction, citing book and verse, that the

requisite similarities are lacking. See D. Ct. Op. at 38-42. We 

see no advantage in repastinating soil already well ploughed and

instead adopt Judge Woodlock's characterization. However, we

think it wise to emphasize two aspects. First, the Hospital had

good reason to believe that the clinical supervisor's misconduct,

while reprehensible, was markedly less serious than the

appellant's misconduct. Second, the supervisor unlike the

appellant did not have a history of repeated disciplinary

actions over a ten-year period.

III. CONCLUSION III. CONCLUSION

We return to the point of our beginning. The

appellant's several efforts to mount an offensive (including some

initiatives that we have not discussed here) are uniformly

unavailing. The record in this case simply will not support a

reasonable inference that the Hospital discharged the appellant

11

because it harbored an animus against African-Americans.

Consequently, we need go no further.

Affirmed. Affirmed. 

12