# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———————

No. 11-6043

———————

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| In re: Jeffrey Thoms, also known as | * | |
| Jeff Thoms; Sue Thoms, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Van Daele Bros., Inc., | * | |
| | * | Appeal from the United States |
| Plaintiff – Appellant, | * | Bankruptcy Court for the Northern |
| | * | District of Iowa |
| v. | * | |
| | * | |
| Jeffrey Thoms, | * | |
| | * | |
| Defendant – Appellee, | * | |

———

Submitted: November 18, 2011
Filed: December 22, 2011

———

Before SCHERMER, VENTERS, AND SALADINO, Bankruptcy Judges.

———

VENTERS, Bankruptcy Judge.

The Plaintiff, Van Daele Bros., Inc., appeals the order of the bankruptcy court[1] determining that debt owed to it by Debtor Jeffrey Thoms is not excepted from

———————

[1] The Honorable Paul J. Kilburg, Bankruptcy Judge for the Northern District of Iowa.

discharge under 11 U.S.C. § 523(a)(6).  For the reasons stated below, we affirm the bankruptcy court's decision.

## BACKGROUND

Because we find that the bankruptcy court's decision was supported by the wealth of the evidence, we adopt with few modifications the factual background set out by the bankruptcy court.

In February 2008 Jeffrey Thoms approached Jerry Van Daele, a principal of Van Daele Bros., Inc., to refinance the debt secured by Thoms's cattle herd.[2]  Thoms proposed to sell his herd of 24 cows and 5 yearling heifers to Plaintiff for $75,000 and then to lease them back for five annual lease payments of $18,784.23.   Thoms would retain possession and responsibility for the cattle, which would be kept on a lot owned by Thoms's neighbor.  Thoms prepared the documents for the sale and leaseback .  Neither party was represented by an attorney.

To finance the purchase, Van Daele obtained a loan from Kerndt Bros. Savings Bank through his company, Van Daele Bros., Inc. Van Daele testified that he continues to make payments on that loan.  The transaction was finalized on March 1, 2008, and Thoms used the $75,000 payment from Plaintiff to pay off a loan with Community Bank.

At the time of the transaction, Thoms was employed as a loan officer at Kerndt Bros. Savings Bank.  He had been Van Daele's lending officer at the bank for approximately ten years.  Van Daele testified that he was willing to help Thoms because he considered Thoms a friend and he trusted Thoms because of Thoms's position at the bank.  He also testified that he understood that he was purchasing the

---

[2] Although the named Appellant is Van Daele Bros., Inc., all of the acts upon which the Appellant bases its § 523(a)(6) claim were allegedly directed at Jerry Van Daele personally.

cattle for $75,000 and that the Debtor would lease them from him and keep them at his property. Van Daele maintains that Thoms made oral assurances and agreed to notify Van Daele of any changes in the number of cattle.

In August 2008 Thoms lost his job at the bank. He testified that he initially believed that he could make the first annual payment under the lease the following March by finding a job at another bank. As it turned out, Thoms was only able to find part-time jobs and his income dropped to approximately $40,000 per year, before taxes. Thoms defaulted on the first annual payment due March 1, 2009.

Just over 30 days later, on April 3, 2009, Van Daele picked up twenty 20 cows and 7 calves from Thoms's cattle lot. Thoms was not aware of the repossession until later; apparently, no one was around when the cattle were picked up. Thoms's father, Fred Thoms, claims five of the cows were his, not the Debtor's or Van Daele's. Fred Thoms has filed two replevin actions against Van Daele based on the removal of his five cows. He dismissed the first action just before trial and the other remains pending in the Iowa District Court in Fayette County.

A few days after the repossession, Thoms attempted to pay the 2009 annual payment with a check written by his daughter, Emily. Thoms testified that Emily obtained a loan from a friend of his, Gary Zimmerman, to help Thoms make the payment. Zimmerman loaned Emily $20,000 in the belief that she was going to use the money for college expenses. Van Daele refused to accept the check and apparently told Thoms that if he wanted the cattle back, he would have to pay off the whole debt as set out in the documents Thoms had prepared.

Apparently, the next time the parties discussed the matter was in August or September 2009 when Van Daele saw Debtor at the fairgrounds and told him he was going to have to sell the cattle because it was too costly to keep feeding and caring for them. Thoms testified that he responded: "You've got to do what you've got to

do." Van Daele sold a majority of the cattle in September 2009, and by the end of 2009 or early 2010 he had sold all the cattle, receiving approximately $20,000 to $23,000 in total proceeds. He estimates that he spent approximately $10,000 for the feeding and care of the Cattle from the time he repossessed them until they were sold.

## STANDARD OF REVIEW

We review the Bankruptcy Court's factual findings for clear error and its conclusions of law *de novo*.[3] The Plaintiff does not assert that the bankruptcy court erred in its application of § 523(a)(6); rather, it asserts that the court's factual findings were clearly erroneous. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed."[4] If the Bankruptcy Court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse merely because we might have decided the issue differently.[5] "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[6]

## DISCUSSION

Section 523(a)(6) excepts from discharge debts for an injury that is both willful and malicious.[7] In this context, the term "willful" means that the injury, not merely

---

[3] *See Floret, L.L.C. v. Sendecky* (*In re Sendecky*), 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002).

[4] *Id.*; *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

[5] *See Anderson v. Bessemer City*, 470 U.S. at 573–74, 105 S.Ct. at 1511.

[6] *Id.*

[7] 11 U.S.C. § 523(a)(6) (West 2010).

the act leading to the injury, must be deliberate or intentional;[8] and a "malicious" injury is one that is targeted at the creditor, in the sense that the conduct is certain or almost certain to cause financial harm.[9]

Distilled to its essence, the Appellant's argument is that the bankruptcy court should have found Thoms's debt to the Appellant nondischargeable under § 523(a)(6) because the evidence allegedly showed that: 1) Thoms and his father were partners in the cattle business, 2) Thoms failed to adequately explain a decrease in the number of cattle, 3) Thoms failed to adequately disclose on his bankruptcy schedules and statement of financial affairs the Appellant's repossession of the cattle and Thoms's debt to the Appellant, and 4) Thoms lied to Gary Zimmerman to get a $20,000 loan to try to make the first lease payment.

Putting aside that there was little or no evidence that Thoms and his father were partners[10] and that the bankruptcy court found Thoms's explanation of the decrease in herd size – apparently several cows were lost to sickness and disease – credible,[11] none of these facts, alone or together, is sufficient to warrant a finding that Thoms's debt to the Appellant is nondischargeable under § 523(a)(6).

---

[8] *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998).

[9] *In re Madsen*, 195 F.3d 988, 989 (8th Cir. 1999).

[10] At most the testimony showed that Thoms's father occasionally covered purchases of supplies which Thoms repaid and Thoms once mentioned trying to settle his and his father's disputes with Van Daele together.

[11] Deference must be given to the bankruptcy court's evaluation of the credibility of witnesses.   Fed.R.Civ.P. 52(a).  *See also Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir.1988).

The existence of a partnership between Thoms and his father does not, by itself, create any inference that they conspired to defraud Van Daele. The record is devoid of any affirmative evidence that Thoms sold or otherwise disposed of the missing cattle with the intent to harm Van Daele (personally or Van Daele Bros., Inc.), which evidence is necessary to except a debt from discharge under § 523(a)(6).[12] The alleged omissions from Thoms's schedules included the debt to Van Daele, which omission would undermine – rather than support – the Appellant's contention that Thoms intended all along to discharge his debt to the Appellant. And, finally, the fact that Thoms was willing to go to great (albeit dishonest) lengths to borrow money to repay the Appellant weighs strongly against a finding that Thoms conspired with his father to defraud the Appellant.

As noted above, a factfinder's choice of one of two permissible views of the evidence cannot be clearly erroneous.[13] Here, the Appellant has presented an interpretation of the evidence which is less plausible than the bankruptcy court's interpretation, which attributed Thoms's failure to repay the Appellant primarily to Thoms's unanticipated loss of a higher-paying job. Therefore, we must affirm the bankruptcy court's determination that Thoms's debt to the Appellant is not excepted from discharge under 11 U.S.C. § 523(a)(6).

## CONCLUSION

For the reasons stated above, we affirm the bankruptcy court's decision.

---

[12] See, e.g., *Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir. 1993) (holding that failure to return the correct number of cattle upon termination of a dairy cattle lease did not constitute a willful and malicious injury under § 523(a)(6) in the absence of evidence that the discrepancy resulted from a deliberate attempt to cause financial harm).

[13] *See supra* n. 6.