**William Ray JOHNSON, Appellant,**

v.

**YELLOW FREIGHT SYSTEM, INC., Appellee.**

No. 83–1695.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1983.

Decided May 22, 1984.

Rehearing and Rehearing En Banc Denied June 28, 1984.

Robert W. McKinley, John J. Kitchin, Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, Mo., and Daniel L. Hornbeck, Overland Park, Kan., for appellee.

Samuel I. McHenry, Legal Aid of Western Mo., Kansas City, Mo., for appellant.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Appellant William Ray Johnson brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, and under 42 U.S.C. § 1981. Johnson, who is black, claimed that his discharge from employment with defendant Yellow Freight Systems, Inc., resulted from racial discrimination. The district court denied Johnson relief on the Title VII claim, and the jury returned a verdict in Yellow Freight's favor on the § 1981 claim. We affirm.

Yellow Freight operates a line-haul freight operation of nationwide scope. A relay system of transporting freight is used so that freight is not necessarily driven the entire journey by the same driver in a single tractor-trailer hitch, but is relayed from one terminal to another. A sophisticated computer system is used to coordinate the movement of freight among over 300 Yellow Freight terminals. The efficiency of the computer system depends on accurate and timely information being input by line-haul dispatchers at each terminal, giving the status and location of drivers, tractors, trailers and loads of freight.

Johnson was employed at the Kansas City terminal for Yellow Freight in May 1977 and promoted to line-haul dispatcher in January 1978. William Ross became top manager of the terminal in July 1979. Ross revamped the line-haul dispatch function. He established teams of three by adding a chief dispatcher to each team of one inbound dispatcher and one outbound dispatcher. Johnson was placed on a team as outbound dispatcher with Rene Thompson, a white female, as inbound dispatcher and Levon Robinson, a black male, as chief dispatcher.

Ross testified that from the time the team was formed there were many more complaints about Johnson's team than about other teams. Lorenzo Crawford, Johnson's second-line supervisor, and personnel from the central dispatch office testified that Johnson failed to send information to the computer on a timely basis, causing scheduling problems for the central dispatch office. Central dispatch supervisor Richard Pate testified that Johnson often failed to answer the telephone in his office. It was Johnson's office to which dispatch inquiries were directed. Crawford testified that Johnson was not performing yard checks to see which tractors and trailers were available for dispatch.

Because of these problems, Ross and Crawford decided to terminate Johnson. Johnson was informed that he was being discharged on December 17, 1979. On March 18, 1980, Johnson filed a complaint with the Equal Employment Opportunity Commission (EEOC). After investigating the complaint, the EEOC issued a determination that reasonable cause existed to believe that Yellow Freight had discriminated illegally in its discharge of Johnson. When Yellow Freight did not offer to re-employ him, Johnson brought suit in the district court.

Johnson contends that the district court erred in holding that the evidence did not support a finding that defendant discriminated against him in violation of Title VII by discharging him on December 17, 1979. Johnson also challenges four rulings by the district court excluding evidence offered as proof of discrimination: (1) the refusal to

admit the EEOC determination on his complaint as evidence in the § 1981 claim being tried to the jury; (2) the refusal to admit evidence of statements made by defendant during a meeting requested by Johnson to seek reinstatement; (3) the refusal to allow cross-examination regarding the status of settlement discussions between defendant and defendant's witness Rene Thompson, a former white female employee, in relation to her disputed discharge; and (4) the refusal to allow cross-examination concerning a letter being circulated by current black employees complaining of racial discrimination by defendant in promotion practices.

### Review of Title VII Decision

■■■ The principles for the order and allocation of proof in a Title VII case are outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, the plaintiff in a Title VII case must first prove by a preponderance of the evidence a prima facie case of discrimination. Once the plaintiff establishes a prima facie case, the burden of coming forward with a legitimate nondiscriminatory reason for the employment decision in question shifts to the employer. Upon the articulation by the employer of such a reason, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the reasons articulated by the employer are in fact a mere pretext for unlawful discrimination. Although the burden of production shifts back and forth, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981).

### Defendant's Rebuttal of Plaintiff's Prima Facie Case

It is clear that Johnson established a prima facie case of discriminatory discharge by showing that (1) he is a member of a protected class; (2) he was capable of performing his job satisfactorily; and (3) he was discharged. *Boner v. Board of Comm'rs*, 674 F.2d 693, 696 (8th Cir.1982); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1253 (8th Cir.1981). As the district court observed, the dispute centers not on Johnson's capabilities, but on his actual job performance.

The first task before the district court was to determine whether defendant had rebutted Johnson's prima facie case by articulating a legitimate business reason for the discharge. *Board of Trustees v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978). Yellow Freight offered substantial testimony that Johnson was not performing his job satisfactorily and that he was fired for poor work performance during the period from September 1979 until December 1979. After viewing the witnesses and hearing all their testimony, the district court found that it was Johnson's primary responsibility to enter promptly dispatch information in the computer system and to answer the telephone line from the central dispatch office, which he failed to do. The court also found that Johnson was responsible for, but failed to perform, daily yard checks to verify which tractors and trailers were available for dispatch.

■■■ The trial court is in a superior position to determine the credibility of witnesses and to resolve conflicts in the testimony. *Bunny Bread*, 646 F.2d at 1253. Factual findings of the trial court are not to be set aside on review by this Court unless they are clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *See* Fed.R.Civ.P. 52(a); *Walker v. International Business Machines Corp.*, 698 F.2d 959, 962 (8th Cir.1983). A careful review of the record in this case does not convince us that the district court's findings of fact are clearly erroneous. Accordingly, Johnson's termination must be examined in light of those findings. *Bunny Bread*, 646 F.2d at 1254. Because poor work performance is a legitimate ground upon which to base a discharge, it is apparent that Yellow Freight

articulated a sufficient reason for Johnson's discharge and thereby rebutted his prima facie case.

### Pretext

■ Johnson argues that Yellow Freight's stated reasons for his discharge are merely a pretext for unlawful discrimination. To prevail on this point, Johnson must show such pretext by a preponderance of the evidence. *Kirby v. Colony Furniture Co., Inc.*, 613 F.2d 696, 703 (8th Cir.1980). The district court found that Johnson did not make the necessary showing of pretext. We have concluded, *supra*, that the district court's findings of fact were not clearly erroneous. Additionally, the court correctly applied the relevant law on this issue to these facts. Accordingly, we affirm the ruling of the district court on the issue of pretext.

In attempting to establish pretext, Johnson submitted copies of five evaluations showing average or better job performance through sometime in September 1979. Based on these evaluations, his own testimony, and favorable testimony by Robinson regarding his work performance, Johnson contends that his work performance was satisfactory. However, the findings of the district court that Johnson was not performing the primary responsibilities of his job foreclose Johnson's attempt to prove pretext by showing that his work was satisfactory.

■ Johnson further claims that white supervisory employees received written warnings for unsatisfactory work performance, but that he received no such written warning. Johnson claims that, even assuming his work was unsatisfactory, this disparate treatment evidenced defendant's intent to discriminate. Although Title VII permits discharge without a warning, it does not permit discriminatory application of a warning policy. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283–84, 96 S.Ct. 2574, 2580–2581, 49 L.Ed.2d 493 (1976). Johnson submitted evidence showing that four white supervisory employees received letters criticizing their work within two-and-one-half years prior to his termination. A few warning letters also were sent out to white supervisors after July 1980.

■ Ross explained that prior to Johnson's termination, it was Yellow Freight's policy not to issue warning letters to its supervisors. Only one warning letter was sent after Ross's arrival. It was sent with his approval because of special circumstances: a written reprimand was sent to Thompson in October 1979 in order to appease union stewards who were angered over abusive language Thompson had directed toward a black driver. Any other warning letters that had been issued were issued in violation of company policy. In light of Johnson's general denial that he had been given oral warnings, that policy changed in favor of sending warning letters to supervisory employees if work performance problems developed. Most of the warning letters sent both before and after Johnson's discharge were issued by Crawford, a black, who presumably would have no desire to deny black employees the benefit of written warnings.

The district court found that defendant adequately had explained why some white employees received warning letters. Giving due regard to the district court's opportunity to judge the credibility of the witnesses and to resolve conflicts in testimony, *Bowers v. Kraft Foods Corp.*, 606 F.2d 816, 818 (8th Cir.1979), we cannot say that the district court's finding was clearly erroneous.

### Alleged Errors in the Exclusion of Evidence

Johnson contends that he is entitled to a new trial on his § 1981 claim because the district court erroneously refused to allow the jury to view the EEOC determination.[1] That determination briefly summarizes the

---

1. The determination was allowed into evidence in plaintiff's Title VII case, which was tried to the court rather than to the jury.

results of the EEOC investigation and concludes that there was reason to believe that Johnson had been discriminated against.

■ Administrative findings made with respect to claims of racial discrimination are admissible under Fed.R.Evid. 803(8)(C) in a federal trial de novo. *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961 n. 39, 48 L.Ed.2d 416 (1976). There is a split of authority among the circuits as to whether EEOC determinations are *per se* admissible in Title VII cases, *see Bradshaw v. Zoological Society of San Diego*, 569 F.2d 1066, 1069 (9th Cir.1978), and *Smith v. Universal Services, Inc.*, 454 F.2d 154, 156–158 (5th Cir.1972), or are to be admitted or excluded in the exercise of the sound discretion of the trial court. *See Walton v. Eaton Corp.*, 563 F.2d 66, 74–75 (3d Cir.1977), and *Cox v. Babcock & Wilcox Co.*, 471 F.2d 13, 15 (4th Cir.1972). These cases are Title VII cases only and thus, because they did not involve jury trials, do not speak directly to the issue now before us. The Ninth Circuit, however, has extended its *Bradshaw* rule of *per se* admissibility to jury-tried employment discrimination claims under § 1981. *See Plummer v. Western International Hotels Co., Inc.*, 656 F.2d 502 (9th Cir. 1981). The question is one of first impression for our Court.

■ We agree with the approach taken in *Walton* and *Cox*. While EEOC reports may contain information that would be useful to the jury, their probative value may be outweighed by problems that would result from their admission. By holding such reports admissible under the hearsay exception provided in Fed.R.Evid. 803(8)(C), the Supreme Court in *Chandler, supra*, did not limit the discretion of the trial judge to exclude the report "if sufficient negative factors are present." Fed.R.Evid. 803(8)(C) (Notes of Advisory Committee on Proposed Rules). In our view, it would be ill-advised to shackle the discretion of trial judges with a rule of *per se* admissibility. EEOC determinations are not homogeneous products; they vary greatly in quality and factual detail. The trial judge correctly may

perceive a danger of unfair prejudice to the defendant, or properly may consider that time spent by the defendant in exposing the weaknesses of the EEOC report would add unduly to the length of the trial. Moreover, the trial judge properly may give weight to the hearsay nature of the EEOC report and to the inability of the defendant to cross-examine the report in the same way that a party can cross-examine an adverse witness. For these reasons, we hold that in an employment discrimination case the admission of administrative findings, such as an EEOC reasonable cause determination, is to be left to the sound discretion of the trial court. We believe that this is particularly important in cases, like the present one, in which an employment discrimination claim is tried to a jury.

■ Applying the abuse of discretion standard of review, we note that the EEOC determination of reasonable cause in the instant case is supported factually by only two highly conclusory sentences: "Evidence of record fails to reflect that Charging Party was counseled and/or warned about his poor job performance and attitude. However, the record shows that similarly situated white employees were counseled and/or warned on numerous occasions prior to their discharge." Because substantial evidence was presented to the jury on all matters summarized in the report, there is little probative value in the EEOC's conclusory statements regarding the same evidence. To admit the report under these circumstances would amount to admitting the opinion of an expert witness as to what conclusions the jury should draw, even though the jury had the opportunity and the ability to draw its own conclusions from the evidence presented regarding disparate treatment.

■ Furthermore, the district court noted that admission of the determination would have necessitated the taking of additional evidence to apprise the jury of the nature and extent of the EEOC investigation. To do so undoubtedly would have lengthened the trial. When the probative

value of evidence is minimal, a court may weigh the value of that evidence against the fact that to admit it would prolong the trial. *See* Fed.R.Evid. 403. Under these circumstances, we do not believe that the trial court abused its discretion in sustaining defendant's objection to the admission of this report into evidence in the § 1981 case.

 Johnson next argues that the trial court erred in refusing to admit evidence of statements made by an employee of Yellow Freight during a conference requested on behalf of Johnson in an attempt to get his job back. Johnson's counsel sought to present evidence of the statements by offering testimony of Joseph Beasley, a representative of Operation PUSH, who attended the meeting. According to Johnson's counsel, Beasley would have testified that at this meeting, Yellow Freight admitted that during a post-termination investigation it was discovered that, contrary to a letter summarizing the reasons for Johnson's discharge, Johnson had not made threats to other employees. Johnson claims that Yellow Freight's failure to rehire him after this discovery is evidence of discriminatory intent.

At trial, defendant requested that Beasley's testimony be excluded under Fed.R. Evid. 408 because it dealt with a statement made during settlement negotiations. Johnson argues that the meeting was not a settlement negotiation, or that if it was, the testimony should have been admissible because Rule 408 does not require the exclusion of evidence "otherwise discoverable." While this may be true, the district court did not sustain Yellow Freight's objection on the ground that the statement was made during settlement negotiations. Rather, the court excluded the evidence because Yellow Freight's discovery that

Johnson had not made threats to other employees occurred *after* Johnson's discharge and therefore had no bearing upon the question of whether the discharge decision was motivated by discriminatory intent.[2] After an offer of proof was made, the district court again sustained the objection on relevancy grounds.[3] The district court did suggest that plaintiff could cross-examine Ross regarding the basis for the charge that Johnson had threatened other employees, apparently because such cross-examination might have been relevant for purposes of impeachment. *See Reichenbach v. Smith*, 528 F.2d 1072, 1075 (5th Cir.1976). Johnson's counsel, however, made no attempt to go into this matter during his cross-examination of Ross.

We cannot say that by excluding Beasley's testimony the district court abused its discretion. Defendant's decision to discharge Johnson was based on facts believed true at the time of discharge and was not tainted by the after-acquired information, particularly where, as here, defendant had substantial grounds for discharging Johnson independent of a belief that he had made threats against other employees.

 Johnson further contends that the trial court erred in sustaining defendant's objection to cross-examination of defendant's witness Rene Thompson regarding her pending lawsuit against Yellow Freight. The district court allowed Johnson's counsel to establish that Thompson had been discharged by Yellow Freight and that she was contesting the discharge. The court then upheld an objection to further questioning, which Johnson claims would have shown that Thompson's testimony was biased because it might be used as a bargaining tool in future settlement negotiations over her claim. The court reasoned that with regard to the witness's

---

**2.** "The Court: I'm going to sustain the objection, based on the investigation made *after the fact* and it is not clear to me it had anything to do with compromising this plaintiff's termination" Trial Transcript (T.) at 33 (emphasis added).

**3.** "The Court: I'm going to sustain the objection at this time. Mr. McHenry, I would say this.

You will be permitted to cross-examine him as to the factual foundation that Mr. Ross said that this man made threats.... This was all *after the fact,* and I think it would be a collateral issue, not even collateral, immaterial issue that we are getting into at this point." T. at 36 (emphasis added).

credibility, future conduct in negotiations was speculative and that the prejudice resulting from this line of cross-examination would far outweigh any value the testimony could have regarding her credibility.

Prior to the district court's ruling on this objection, in a conference before the bench, Johnson's attorney admitted that he had no knowledge of any settlement negotiations between Thompson and defendant. Defendant's counsel stated that defendant had refused to discuss settlement with Thompson. While Thompson's involvement in past settlement negotiations, had there been any, might have been relevant, her conduct in possible future negotiations was a matter of pure speculation void of any probative. value. Had the court allowed counsel to pursue this line of inquiry, the jury's decision may well have been unfairly influenced. We do not believe that the trial court abused its discretion in excluding questioning about such speculative financial ties. *See United States v. Losing*, 560 F.2d 906, 910–11 (8th Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977).

▪ Finally, Johnson claims that the trial court erred in not allowing cross-examination of Crawford concerning a petition circulated among black supervisors. The petition alleged discrimination in that black employees had not been promoted to positions outside the terminal. Johnson maintains that this evidence is relevant as a reflection of defendant's overall employment practices concerning black employees.

The district court sustained defendant's objection to questions regarding the petition, reasoning that to allow questions raising a new and unproven claim would necessitate inquiry into the truth or falsity of the claim. The court noted that the petition was circulated three-and-one-half years *after* Johnson's termination. It is within the trial judge's discretion to exclude evidence if its probative value is outweighed by considerations of undue delay and confusion of the issues. Fed.R.Evid. 403. We do not find any abuse of discretion in the

district court's exclusion of this line of cross-examination.

Finding no error, we affirm the judgment of the district court.

McMILLIAN, Circuit Judge, concurring in part and dissenting in part.

I concur in most of the majority opinion. I agree that the district court's finding of no racial discrimination in violation of Title VII was not clearly erroneous. I also agree that the district court did not abuse its discretion in excluding the testimony of Joseph Beasley and in limiting cross-examination of Rene Thompson and Lorenzo Crawford. I do not agree, however, with the majority opinion's analysis of the admissibility of the EEOC reasonable cause determination in the § 1981 case. For the reasons discussed below, I would reverse the judgment of the district court entered in favor of appellee with respect to the § 1981 claim only and remand for a new trial.

Appellant brought this action alleging that his discharge was the result of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1870, 42 U.S.C. § 1981. The Title VII claim was tried to the court; the § 1981 claim was tried to a jury. Appellant sought to introduce the EEOC reasonable cause determination as evidence of discrimination in both cases. The district court admitted the EEOC reasonable cause determination in the Title VII case but sustained appellee's objection to its admission in the § 1981 case. The majority opinion evaluates appellant's allegation that the district court erred in excluding the EEOC reasonable cause determination in the § 1981 case under the abuse of discretion standard of review and finds no abuse of discretion because the EEOC reasonable cause determination was cumulative, and therefore of little probative value, and because its admission would have required the presentation of additional evidence to refute its findings and attack its deficiencies, and thus have prolonged the trial.

As an initial matter, I fully agree with the district court's admission of the EEOC reasonable cause determination in the Title VII case. As noted by the majority opinion, prior administrative proceedings are not binding in federal court but are admissible evidence. *Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961 n. 39, 48 L.Ed.2d 416 (1976). However, unlike the majority opinion, I would hold that EEOC reasonable cause determinations are *per se* admissible in Title VII cases. *Compare Bradshaw v. Zoological Society,* 569 F.2d 1066, 1069 (9th Cir.1978) (EEOC determination admissible per se), *and Smith v. Universal Services, Inc.,* 454 F.2d 154, 156–58 (5th Cir.1972) (reversible error to exclude EEOC report in Title VII case), *with Walton v. Eaton Corp.,* 563 F.2d 66, 75 (3d Cir.1977) (banc) (admissibility within discretion of district court), *and Cox v. Babcock & Wilcox Co.,* 471 F.2d 13, 15 (4th Cir.1972) (similar).

The cases cited in the above paragraph are Title VII cases and thus did not involve jury trials. However, in *Plummer v. Western International Hotels Co.,* 656 F.2d 502 (9th Cir.1981), the Ninth Circuit was faced with a fact pattern similar to the one presented here. In *Plummer* the plaintiff filed a civil rights suit alleging her employer discriminated against her on the basis of race in denying her a promotion in violation of Title VII and § 1981. The Title VII and § 1981 claims were presented together and tried before a jury. The plaintiff sought to introduce the EEOC reasonable cause determination as evidence of discrimination. The district court refused to allow introduction of the EEOC reasonable cause determination. The jury returned a verdict in favor of the defendant on both claims; the plaintiff appealed and the Ninth Circuit reversed, holding that "the [civil rights] plaintiff has a right to introduce an EEOC [reasonable] cause determination in a Title VII lawsuit, regardless of what other claims are asserted, or whether the case is tried before a judge or jury." *Id.* at 505.

The employer in *Plummer* had argued that the district court should have discretion to exclude the EEOC reasonable cause

determination in cases where Title VII and § 1981 claims are joined and tried by a jury because of the danger that the jury would give the EEOC reasonable cause determination too much weight in evaluating the § 1981 claim. The court rejected the defendant employer's jury trial argument, noting that *Bradshaw,* the case in which the Ninth Circuit had set forth the per se rule of admissibility of EEOC reasonable cause determinations in Title VII cases, *see* 569 F.2d at 1069, involved claims under both Title VII and 42 U.S.C. § 1983 and thus "did not foreclose the possibility of jury consideration of the EEOC [reasonable cause] determination." 656 F.2d at 505. The *Plummer* court further explained that

[a]n EEOC [reasonable cause] determination, prepared by professional investigators on behalf of an impartial agency, has been held to be a highly probative evaluation of an individual's discrimination complaint. If we were to adopt the distinction between jury and non-jury trials urged by [the defendant employer], in many cases *Bradshaw*['s per se rule of admissibility] could in effect be ignored and the value of EEOC [reasonable cause] determinations wasted. The factual background in a Title VII lawsuit based on racial discrimination will often support a cause of action under 42 U.S.C. § 1981 as well. We believe that *Bradshaw*['s per se rule of admissibility] should apply to such cases even when the plaintiff requests a jury trial.

*Id.* (citations omitted).

I would follow *Plummer* and hold that the district court erred in excluding the EEOC reasonable cause determination in the § 1981 case.

In addition, even applying the abuse of discretion standard of review, I cannot agree with the majority opinion that the EEOC reasonable cause determination was cumulative and therefore of little probative value. "The fact that an investigator, trained and experienced in the area of discriminatory practices and the various methods by which they can be secreted, has

found that it is likely that such an unlawful practice has occurred, is highly probative of the ultimate issue involved in such cases." *Smith v. Universal Services, Inc.,* 454 F.2d at 157. The probative value of the EEOC reasonable cause determination clearly outweighed its prejudicial impact. I also do not agree that allowing the defendant an opportunity to refute the findings in the EEOC reasonable cause determination and to attack its deficiencies would unduly prolong the trial. I would hold that the district court abused its discretion in excluding the EEOC reasonable cause determination in the § 1981 case and that its exclusion was not harmless error. I would reverse the judgment on the § 1981 claim and remand for a new trial.