C. Boyd KESSELRING, Plaintiff,

v.

UNITED TECHNOLOGIES CORPORATION, Defendant.

No. C2-89-622.

United States District Court, S.D. Ohio, E.D.

Jan. 7, 1991.

Richard D. Welch, Donald B. Hallowes, Welch, Hallowes & Roth Co., L.P.A., Reynoldsburg, Ohio, for plaintiff.

Bradd N. Siegel, Porter, Wright, Morris & Arthur, Columbus, Ohio, Gary L. Lieber, Patrick J. Duffy, Schmeltzer, Aptaker & Shepard, Washington, D.C., for defendant.

## OPINION AND ORDER

GRAHAM, District Judge.

This matter is before the court for a decision on the motion of defendant United Technologies Corporation for summary judgment. In his response to the motion, plaintiff Kesselring has conceded that defendant is entitled to summary judgment on Count Two of the complaint, a state age discrimination claim under Ohio Revised Code § 4101.17, and on Count IV, a state law breach of contract claim. Defendant's motion for summary judgment on those claims is hereby granted. Plaintiff opposes defendant's motion for summary judgment as to Count I, a claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and Count III, a state law claim of promissory estoppel.

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Defendant first argues that it is entitled to summary judgment on plaintiff's promissory estoppel claim. In this claim, plaintiff asserts that he was induced by his supervisor "through praise of Plaintiff's job performance, an offer of expanded sales territory, and reinforcement of the expectancies of further employment created by the Defendant" to decline an offer of additional retirement benefits styled the "Golden Handshake." The "Golden Handshake" was a retirement incentive offered by defendant to certain employees aged fifty-eight and older. If the employee elected to accept the offer and retire from the company, he or she would be credited with up to an additional five years of service and up to five years of age for the purpose of computing his or her retirement benefit. The "Golden Handshake" was a one-time offer, and each employee had to elect whether to accept or reject the offer by December 22, 1986. Plaintiff signed an election form rejecting the offer, and continued to work for defendant. After his termination in 1988, plaintiff sought to obtain the "Golden Handshake" benefit, but defendant denied this request in keeping with the one-time-only terms of the offer.

Defendant argues that plaintiff's promissory estoppel claim relates to an employee retirement plan and that therefore plaintiff's state law claim is preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* However, the court will decline to decide this issue, and will assume for purposes of defendant's motion that plaintiff's state law claim is not preempted.

Plaintiff indicates that he relied on representations made to him by Frank Roberts, his supervisor. At the time of the "Golden Handshake" offer in December of 1986, plaintiff was employed with defendant's Sikorsky Aircraft Division as a regional sales manager. Plaintiff's job included locating customers interested in the purchase of Sikorsky S–76 helicopters. Plaintiff's sales area at that time was known as the Great Lakes Region, which encompassed Western Pennsylvania, Ohio, West Virginia, Kentucky, Indiana and Michigan. In 1986, three regional managers were laid off, including the manager who was assigned to the North Central Region adjacent to plaintiff's territory.

Plaintiff testified in his deposition that he discussed the "Golden Handshake" offer with Mr. Roberts. According to plaintiff, Mr. Roberts left it entirely up to plaintiff as to whether to accept or reject the offer, but said that if plaintiff decided to stay, he would be offered an expanded sales territory consisting of the Great Lakes and North Central Regions. (Plaintiff's Dep., pp. 68–69). Plaintiff took this statement as being an implication that he was doing a good job and that he should remain with the company. *Id.* Mr. Roberts testified that he did discuss an expanded sales territory with plaintiff, and that although he did not specifically recall asking plaintiff to stay with the company, it was possible that he had said something along that line. (Roberts Dep., pp. 78, 83–85). He did not recall discussing with plaintiff whether plaintiff's job would be at risk if he turned down the "Golden Handshake" offer. (Roberts Dep., p. 78). After

the conversations, plaintiff's sales territory was in fact expanded to include the North Central Region, and plaintiff worked this expanded sales territory until his termination in January, 1988.

Plaintiff testified that this offer of an expanded sales territory combined with praise of his job performance led him to reject the "Golden Handshake" offer. (Plaintiff's Dep., p. 75). Basically, plaintiff felt that due to this offer of an expanded territory, praise of his job performance, and his length of seniority with the defendant, his job was secure for as long as he wished to work. However, plaintiff acknowledged that he was not told by Mr. Roberts that if he stayed with defendant and rejected the "Golden Handshake" offer, he would be guaranteed a job. (Plaintiff's Dep., p. 67). Plaintiff felt that an "implication" of job security was present, but even plaintiff acknowledged that he could not reasonably infer from implication alone that he was guaranteed employment for any period of time. (Plaintiff's Dep., pp. 69–70). Plaintiff further admitted that he had no written contract of employment with defendant, and that he understood that he could leave anytime, and that defendant could terminate him at any time. (Plaintiff's Dep., p. 50). He testified that no one told him he was entitled to continued employment, or that he could be terminated solely for good cause. (Plaintiff's Dep., pp. 55–57). He further acknowledged that no one ever told him he would be spared from layoff due to economic circumstances. (Plaintiff's Dep., p. 75).

■ Under Ohio law, promissory estoppel requires proof of a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person, which does induce such action or forbearance, and which is binding because injustice can be avoided only by enforcement of the promise. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150, 154 (1985). The promise must be clear and unambiguous in its terms, the reliance must be reasonable and foreseeable, and the party claiming estoppel must be injured by the reliance. *Cohen & Company, CPA v. Messina, CPA*, 24 Ohio App.3d 22, 492 N.E.2d 867 (1985).

■ Even accepting plaintiff's testimony as true, the record is devoid of any representations made by any agent of defendant upon which plaintiff could have reasonably and foreseeably relied as creating a promise of future employment for as long as plaintiff wished to work. Praise with respect to job performance or discussion of future career development, standing alone, is insufficient to modify an employment-at-will relationship. *Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St.3d 131, 543 N.E.2d 1212 (1989). No evidence has been offered based upon which a reasonable jury could find that clear and unambiguous promises were made from which plaintiff could have reasonably concluded that he would be guaranteed employment until he chose to retire if he rejected the offer. No representations have been identified which defendant could reasonably have foreseen as likely to induce reliance or an expectation of indefinite employment on the part of plaintiff. Mere speculation or belief on the plaintiff's part, unsupported by any clear and unambiguous promise or representation by defendant, that he would be spared layoff due to his age or seniority, is insufficient to establish a promissory estoppel claim.

Plaintiff has not demonstrated the existence of a genuine issue of material fact in regard to his promissory estoppel claim. A jury could not reasonably find from the evidence in the record that all of the elements of a promissory estoppel claim under Ohio law have been satisfied, and defendant is entitled to summary judgment on that claim.

■ In Count I of his complaint, plaintiff advances a claim under the ADEA, alleging that he was terminated due to his age. Plaintiff was sixty-six years old at the time of his termination. Defendant's position is that plaintiff was terminated pursuant to a company-wide reduction in force, and that age was not a factor in his termination.

In order to maintain an action under the ADEA, the plaintiff must establish a prima facie case by introducing evidence that he was adversely affected by employment decisions under circumstances which give rise to an inference of unlawful discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Under the four criteria in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff in an ADEA case must demonstrate as a threshold matter: 1) that plaintiff was a member of the protected class (over age forty); 2) that plaintiff was subjected to an adverse employment action; 3) that plaintiff was qualified for the position; and 4) that plaintiff was replaced by a younger person. *Simpson v. Midland–Ross Corporation*, 823 F.2d 937, 940 (6th Cir.1987).

Proof of the *McDonnell Douglas* elements raises a rebuttable presumption of discrimination, and the burden of production then shifts to the employer to provide a legitimate nondiscriminatory reason for the action taken. *Burdine, supra.* When the employer advances a legitimate reason for the employment action, the plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision. *Id.* 450 U.S. at 256, 101 S.Ct. at 1095.

However, the Sixth Circuit has held that the *McDonnell Douglas* test is not to be applied mechanically in age discrimination cases, but rather courts are to employ a case-by-case approach that focuses on whether age was in fact a determining factor in the employment decision. *Barnes v. Gencorp, Inc.*, 896 F.2d 1457, 1465 n. 9 (6th Cir.1990). In cases involving a work force reduction, a plaintiff must also produce additional direct, circumstantial, or statistical evidence tending to indicate that the employer "singled out the plaintiff for discharge for impermissible reasons" in order to make out a prima facie case. *Barnes*, 896 F.2d at 1465.

The first matter at issue here is whether a work force reduction occurred in this case, a fact which plaintiff disputes. In *Barnes*, 896 F.2d at 1465, the court defined a reduction in force as follows:

A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employers already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

See also *Sahadi v. Reynolds Chemical*, 636 F.2d 1116 (6th Cir.1980).

Here, the evidence is uncontroverted that Mr. Mott, plaintiff's supervisor, was directed to reduce the number of employees in his department as part of a company-wide reduction in force. The reduction was deemed necessary due to the fact that, as a result of a large decrease in demand for the S–76 helicopter by the oil market and other factors, defendant was losing money on the S–76 program. When Mr. Mott adopted the regional system of marketing, there were regional sales managers assigned to work full-time in ten regions across the country. Plaintiff lived and worked in the Great Lakes Region. When the market for the S–76 began to decline, the petroleum division was consolidated with the corporate division, and in 1986, three regions were consolidated with other regions, and the managers of those three regions were laid off. As a result, plaintiff was given an expanded sales territory when the North Central Region was consolidated with the Great Lakes Region.

It is further uncontroverted that when plaintiff's sales region was eliminated, no other employee was assigned to work in that region on a full-time basis or to actively initiate customer contacts. Rather, the evidence shows that defendant's activity in the region after plaintiff's termination was

limited to assigning a manager from one of the other regions which were still active to respond to any customer inquiries coming from the defunct region. The fact that other employees were assigned to perform a function which constituted only a part of plaintiff's duties, in addition to servicing their own regions, does not mean that plaintiff was replaced. *Barnes*, 896 F.2d at 1465. Employing the *Barnes* definition of reduction in force, the evidence reveals that plaintiff was not replaced by another employee following his termination, and that no genuine issue of material fact has been shown in that regard. The court concludes that this is a reduction in force case.

Plaintiff argues that there is sufficient evidence in the record to create a genuine issue of material fact on the issue of whether defendant's real motive in terminating him was his age. Plaintiff alleges that Mr. Mott made statements to the effect that he preferred younger marketing types in his department, and that he wanted to get rid of the "white hairs" in his department. However, the actual deposition testimony does not support plaintiff's position.

Mr. Wyckoff testified in his deposition that he was told by a person, possibly Mr. Antippas, that Mr. Mott had made a statement at a meeting in Virginia that he would like to have young people around him. (Wyckoff Dep. p. 41). This testimony contained hearsay evidence, which may not be considered on a motion for summary judgment. *Daily Press, Inc. v. United Press International*, 412 F.2d 126 (6th Cir. 1969). Neither Mr. Wyckoff nor plaintiff were at the meeting in question. Mr. Antippas, who was at the meeting, testified that Mr. Mott made a comment about a good job being done by a young individual in the department, Mr. Germon. In the opinion of Mr. Antippas, this statement conveyed the inference that Mr. Mott "would like other young people of that nature" and that this was the kind of person he wanted in the marketing department. (Antippas Dep. pp. 49–50). This testimony does not support plaintiff's contention that Mr. Mott expressed a prefer-

ence for young marketing types. Mr. Antippas's interpretation of Mr. Mott's statement was an expression of mere conjecture or belief on his part, insufficient to create an inference of age discrimination. *Chappell v. GTE Products Corp.*, 803 F.2d 261 (6th Cir.1986). The isolated reference by Mr. Mott to a young person who was doing a good job was also too abstract to create a reasonable inference of age discrimination. *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309 (6th Cir.1989). Mr. Mott's comment that a young person was doing a good job cannot reasonably be construed as stating a preference for younger workers.

The only direct reference to "white hairs" in the evidence is in the testimony of Mr. Antippas, who recalled Steve Burns using the phrase, but not the context in which it was used. (Antippas Dep. p. 44). Even assuming that Mr. Burns used the phrase, the record is devoid of any indication that he used it in a derogatory sense or that the statement could be attributed to Mr. Mott. Mr. Roberts stated that someone told him that Mr. Mott had used the phrase, but he could not recall when. (Roberts Dep. pp. 123–124). Plaintiff testified that he had heard statements regarding how Mr. Mott felt about working with "grey hairs." However, neither Mr. Roberts nor plaintiff personally heard Mr. Mott use that phrase. (Roberts Dep. p. 121; Plaintiff's Dep. p. 176). The testimony of Mr. Roberts and plaintiff contains hearsay evidence which may not be considered in summary judgment proceedings. *Daily Press, supra.*

Mr. Mott was quoted by Mr. Burns as saying that his candidates for salesperson should have experience selling high-ticket items and look good in a suit, which he construed as meaning that they should represent the company well. (Burns Dep. p. 60). Mr. Antippas testified that Mr. Mott told him he was amazed that Mr. Antippas had been with the company so long, and that he took this statement as meaning that everyone should move upward by shifting out. (Antippas Dep. p. 50). These statements are devoid of any reference to age. In fact, Mr. Mott testified that he preferred mature salespersons since the

customers were usually represented by older individuals. (Mott Dep. p. 153).

Plaintiff also notes the testimony of Mr. Wyckoff that in 1982, Mr. Mott suggested that perhaps Mr. Wyckoff was no longer interested in travelling at his age. (Wyckoff Dep. p. 38). Although Mr. Wyckoff was offended by this comment, it could equally be viewed as an expression of concern on Mr. Mott's part, since some older people may well prefer not to travel as much. Shortly after the statement was allegedly made, Mr. Mott transferred Mr. Wyckoff to the international division, a position which entailed more travelling than he had done previously. Thus, Mr. Mott's subsequent actions are inconsistent with any discriminatory intent. The comment is too ambiguous and remote in time from plaintiff's termination to be relevant.

Finally, plaintiff refers to testimony to the effect that Mr. Mott discussed the potential impact of the age discrimination laws in the event of plaintiff's termination with Mr. Amico of defendant's Human Services Department. (Amico Dep. p. 32). Mr. Burns testified that Mr. Mott indicated that "whoever was laid off, we had to be very careful that it was done properly and appropriately so there would be no recourse." (Burns Dep. pp. 42–43). The mere fact that an employer considers whether its contemplated employment decision will violate discrimination laws is not evidence of discriminatory intent. Consideration of the potential impact of employment discrimination laws by employers should be encouraged, both for the benefit of the employer and the employee. If consideration of those laws constituted prima facie evidence of discriminatory intent, employers would avoid examining their potential application instead of attempting to comply with them. It is to be expected that an employer would want to avoid litigation concerning its employment decisions by taking steps to ensure that its actions do not violate discrimination laws. Evidence that Mr. Mott considered the possible impact of discrimination laws and expressed the need to act properly in effecting the layoff does not support a reasonable inference of discriminatory intent.

Contrary to plaintiff's arguments, the evidence fails to show that Mr. Mott made many of the statements attributed to him by plaintiff. Those statements which are supported by competent evidence are in the nature of abstract comments or generalities which are insufficient to support a finding of age discrimination. *Gagne*, 881 F.2d at 314. In fact, statements in other cases which contained clearer references to age than any of the statements involved here have been held not to create a reasonable inference of age discrimination. *See e.g.*, *Gagne*, 881 F.2d at 314 (supervisor stated he "needed younger blood"); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir.1987) (plaintiff told "you would have to take another physical examination and at your age, I don't believe you could pass it"); *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405 (7th Cir.1984) (recommendation that a "bright young individual" be hired to replace plaintiff and that plaintiff should not be discharged until a "younger man" was available to replace him); *Carpenter v. American Excelsior Co.*, 650 F.Supp. 933, 938 (E.D.Mich.1987) (statements by company official that he liked his salespeople "young, mean and lean" and that plaintiff was not as young as he used to be); *Williamson v. Owens–Illinois, Inc.*, 589 F.Supp. 1051, 1058 (N.D.Ohio 1984) (comment "why should I promote an older pilot when I've got a lot of sharp young guys who want to get ahead?" held insufficient).

Plaintiff's next argument is that defendant did not follow the usual company policy regarding layoffs in deciding to terminate him. Plaintiff points to evidence that his performance scores and seniority were higher than those of some of the other regional managers, and asserts that he should have been transferred to replace one of the less senior managers.

Plaintiff refers to a document entitled "Guidelines Governing Reduction in Force of Salaried Employees," a document prepared by the Human Services Department. (Appendix, Defendant's Motion for Summary Judgment, Ex. K). Section I provides in

regard to exempt employees, such as plaintiff, that:

> Employees' demonstrated performance should receive at least equal emphasis to length of continuous service.... When performance and capability are essentially equal, length of continuous service should be the basis for selection.

Plaintiff argues that defendant's failure to follow this guideline is indicative of discriminatory intent. However, Mr. Hill of the Human Services Department testified in his deposition that while the guidelines were intended as a tool to provide some means of uniformity in employment decisions, situations could arise which were not foreseen in drafting the guidelines and which would require flexibility in applying them. (Hill Dep. p. 81). The decision to terminate plaintiff was reviewed and approved by the Human Resources Department, which drafted the guidelines.

Further, the evidence reveals that the above guideline was not applicable here, since there was no one else performing plaintiff's specific job. (Amico Dep. pp. 40, 54, 73–74). Plaintiff was the only sales manager in his region.

Mr. Hill testified that defendant had a policy against bumping, that is, transferring a senior employee to the job of another employee with less years of service and laying off the junior employee. (Hill Dep. pp. 49, 51, 70). Although Mr. Mott considered bumping in plaintiff's case, he ultimately rejected this option. This does not lend support to plaintiff's argument that defendant really had no policy against bumping.

Evidence has also been presented that it was not economically feasible to transfer plaintiff to another region to replace another manager. The cost of moving a salesman to a new region was estimated as being between $30,000 and $70,000. (Burns Dep. p. 39). Mr. Burns estimated it would take two years to move in, establish a customer base and become productive. (Burns Dep. p. 74). Mr. Mott stated it would take a year to become familiar with a new area, while Mr. Roberts stated that in his opinion, it would take at least six months to become oriented with the customers in a new territory. (Mott Dep. p. 59; Roberts Dep. p. 152). There was no testimony estimating the start-up time as being less than six months. The most junior sales manager, Mr. Reenstra, received a superior rating in 1987. (Plaintiff's Appendix Ex. N). He had the highest volume of sales and his own customer contacts, he brought twelve new customers to the company, and sold a record number of helicopters before he left the company. (Burns Dep. pp. 41, 72, 74). The next most junior sales manager was Mr. Garrett, who had received a performance rating of fully competent in 1987, which was one step below plaintiff's superior rating that year. (Plaintiff's Appendix Exs. I, L). However, Mr. Garrett had produced the next highest number of sales, had sold the first B model in his territory, and had customer contacts in his region. (Burns Dep. pp. 72–74). Mr. Pope, who also had fewer years with the company than plaintiff, was familiar with the off-shore oil market, had customer contacts, had made sales, and had a superior rating in 1987. (Roberts Dep. p. 70; Mott Dep. p. 137; Plaintiff's Appendix Ex. M). All of the regional managers were rated fully competent or above, and some had been with the company longer than plaintiff. Plaintiff had sold no helicopters in his four years as a regional sales manager, whereas all the other regions had produced sales. (Mott Dep. p. 50). Mr. Mott testified that to allow bumping based on seniority when the junior employee had a better sales record would demoralize the sales force and adversely affect the incentive to locate customers. (Mott Dep. p. 144).

■ There is no evidence in the record from which it could reasonably be found that defendant had a policy which permitted bumping which was not followed in plaintiff's case. An employer has no duty under the ADEA to permit an employee to transfer to another position or to displace workers with less seniority, when the employee's position is eliminated as part of a work force reduction. *Barnes*, 896 F.2d at 1469; *Ridenour v. Lawson Co.*, 791 F.2d 52 (6th Cir.1986).

Plaintiff has introduced no evidence tending to establish that it was economically feasible to move him to another region. It is not enough for plaintiff to attack the soundness of defendant's business judgment in making that decision. *Chappell*, 803 F.2d at 266. Rather, to establish pretext, plaintiff must show that defendant's reasons for laying him off were not credible either by showing the reasons had no basis in fact, or that the reasons were not the actual factors motivating the discharge or were insufficient to motivate the discharge. *Id.* Plaintiff has offered no evidence to create a genuine issue of material fact on the issue of whether the reasons for plaintiff's layoff were based in fact, or to undermine defendant's opinion that, due to the length of time required to establish contacts in an area (between six months to two years), the actual cost of the move, the financial losses already being incurred by the S–76 program, and the existing contacts and performance of the other regional managers, it was not economically feasible to transfer plaintiff.

Plaintiff further argues that the decision to eliminate his sales territory was a pretext for discrimination. However, there is no evidence in the record from which a reasonable inference of pretext could be drawn. There is uncontroverted evidence that plaintiff sold no helicopters in his region, whereas all of the other regions had produced sales. The lack of sales in plaintiff's region was due in part to the fact that the S–76 had no de-icing equipment, which was a problem in the Great Lakes–North Central Region during the winter. (Burns Dep. p. 36). Another factor was that the distance between cities in that region made fixed-wing aircraft a more practical transportation alternative for corporations. Plaintiff has produced no evidence showing that defendant's decision to eliminate his sales territory was not based on legitimate business considerations, *i.e.,* that the proffered reasons for the elimination of plaintiff's region were false. In fact, defendant's position is further supported by evidence that the market for S–76 helicopters declined dramatically during the 1980's to the point that presently defendant employs one salesman for the S–76 line to service the entire United States and Canada. (Donahue Dep. p. 90; Burns Dep. p. 76).

Plaintiff also asserts that the fact that Mr. Mott hired younger employees of an average age of 37.3 years when building up the marketing department indicates age discrimination. This fact alone does not indicate age discrimination. In light of the fact that plaintiff was in his sixties at that time, it would not be unexpected for Mr. Mott to hire people who were younger than plaintiff. Further, plaintiff was given the job of regional sales manager early in 1984, which was subsequent to the hiring of most of the younger managers. (See Defendant's Supp. Appendix Ex. D, Interrogatory No. 6). The fact that Mr. Mott agreed, at plaintiff's request, to transfer plaintiff to the position of regional sales manager, despite plaintiff's relative lack of sales experience (Mott Dep. pp. 42–45) does not support plaintiff's claim of discrimination. In addition, plaintiff's statistics fail to show any pattern of discrimination based upon age in the termination of employees. Three managers who were substantially younger than plaintiff were laid off prior to plaintiff's termination. Plaintiff has not submitted statistics which are probative of age discrimination.

■ Finally, plaintiff claims that the determination by the Ohio Civil Rights Commission dated June 8, 1989 that "it is probable that Respondent has engaged in practices unlawful under Section 4112, Revised Code" constitutes evidence of discrimination. (Plaintiff's Appendix, Ex. 15). The Supreme Court in *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) noted that prior administrative findings may be admitted as evidence under Fed.R.Evid. 803(8)(C) in Title VII cases. *See also, Harden v. Dayton Human Rehabilitation Center*, 520 F.Supp. 769 (S.D.Ohio 1981). The admissibility of agency reports or findings is a matter within the discretion of the court. *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304 (8th Cir.1984). The existence or non-existence of discrimination still de-

pends upon the facts of a particular case, not upon an agency's conclusions regarding those facts. *Harden,* 520 F.Supp. at 773.

In ADEA cases, it has been held that where the administrative agency's findings merely repeat the plaintiff's allegations and make conclusory determinations of age discrimination, the agency's probable cause determination is not sufficient to preclude summary judgment. *Goldberg v. B. Green and Co., Inc.,* 836 F.2d 845 (4th Cir.1988); *Baumgardner v. Inco Alloys Int'l, Inc.,* 746 F.Supp. 623 (S.D.W.Va.1990).

The court concludes that the Ohio Civil Rights Commission report would not be admissible in a jury trial. The report summarily states that "Evidence substantiates that Respondent retained similarly situated employees who were considered younger and less senior than charging party." This statement is very similar to the conclusory comments in the report in *Johnson* which was held to be properly excluded. As in *Johnson,* 734 F.2d at 1309, the parties have submitted substantial evidence on this point, and the Commission's conclusory statements regarding the same evidence are of little probative value. Furthermore, the report also states that "Evidence substantiates that Respondent has not provided documentation and/or witness testimony substantiating their articulated reason(s) for Charging Party's discharge." The Commission's probable cause determination was issued prior to the filing of the instant case, with its attendant discovery process. The above statement indicates that the Commission, in making its determination, did not have before it the evidence which has been presented by defendant in this case. The admission of the report would not only allow the opinion of an expert witness as to what conclusions the jury should draw even though the jury could draw its own conclusions without assistance, *Johnson,* 734 F.2d at 1309, but also would amount to admitting the opinion of an expert who had considered only part of the relevant evidence, thereby creating the possibility of jury confusion.

■ Even if the Commission's findings are considered as evidence in this case, those conclusory findings, arrived at without the benefit of the documentation and testimony presented by defendant here, are not sufficient to save plaintiff's ADEA claim, which is otherwise not supported by the evidence, from summary judgment. *Goldberg,* 836 F.2d at 848; *Baumgardner,* 746 F.Supp. at 625. Further, there is no indication that the Commission, in arriving at its probable cause determination under Ohio law, applied the legal standards of proof relevant to a reduction-in-force case under the ADEA. Evidence which is "merely colorable" or "is not significantly probative" will not preclude summary judgment. *Liberty Lobby,* 477 U.S. at 249–250, 106 S.Ct. at 2511.

■ In summary, while plaintiff has advanced a multitude of arguments in opposition to defendant's motion for summary judgment, an examination of the actual deposition testimony and documentary evidence on file with the court reveals that this evidence does not support plaintiff's position, and is not "such that a reasonable jury could return a verdict for" plaintiff. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. Plaintiff must produce more than a scintilla of evidence to overcome defendant's motion. *Id.* at 252, 106 S.Ct. at 2512. The evidence submitted must present a sufficient disagreement to require submission of the case to a jury. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). Plaintiff has failed to establish a prima facie case under the ADEA, *Barnes, supra* or to produce evidence from which a reasonable inference of age discrimination could be drawn. Defendant is entitled to summary judgment on plaintiff's claims of age discrimination.

Defendant's motion for summary judgment is granted in its entirety. The clerk of courts shall enter judgment for the defendant.