NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0079n.06
Filed: January 31, 2007

No. 05-6521, 05-6522

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


PHILLIP W. FRICKE,                   )
                                     )
    Plaintiff–Appellant–Cross-Appellee,  )
                                     )
v.                                )   ON APPEAL FROM THE UNITED
                                   )   STATES DISTRICT COURT FOR THE
E.I. DUPONT COMPANY,          )   WESTERN DISTRICT OF KENTUCKY
                                   )
    Defendant–Appellee–Cross-Appellant.  )


Before: CLAY and ROGERS, Circuit Judges; and KATZ, District Judge.[*]

KATZ, District Judge. Plaintiff Phillip W. Fricke ("Plaintiff" or "Fricke") appeals the district court's grant of summary judgment in favor of his former employer, E.I. Dupont Company ("Defendant" or "Dupont"). Fricke alleges employment discrimination based on age and disability, pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq* ("ADA"), and the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.040 (2006). The district court found that Fricke could not establish a prima facie case of discrimination as prescribed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because he could not show that Dupont had taken "adverse employment action" against him. This Court hereby **AFFIRMS** the district court's ruling, on different grounds. Because we affirm the

---

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

district court, this Court will not rule on Defendant's cross-appeal.

**Background**

The district court in *Fricke v. E. I. Dupont Co.*, No. 3:02-cv-536-S, 2005 WL 1949552, 2005

U.S. Dist. LEXIS 16794 (W.D. Ky. Aug. 11, 2005) found the following facts:

In 1978, Fricke began working for Dupont, a science and chemical company, at its Louisville, Kentucky plant. As an electrical engineer, Fricke held various positions with the company, most of which dealt with electrical power. In his last job with Dupont, Fricke served as Project Manager, Electrical Distribution Manager, and Power Area Engineer (collectively "Project Manager"). As Project Manager Fricke was supervised by Brent Sparks ("Sparks") until July 2001. At that time, Maureen Atchison ("Atchison") became his supervisor.

As early as December of 2000, Fricke began having problems with supervision. Dupont asserts that Fricke exhibited unusual and inappropriate behavior, such as interpersonal problems with co-workers. Fricke, however, disputes this information.

In the spring of 2001, Dupont placed Fricke on a targeted renewal plan ("renewal plan" [or "performance improvement plan"]). The renewal plan was aimed at helping Fricke improve his performance and specifically included goals for Fricke to improve "Interpersonal Sensitivity and Skill." Although Fricke argues that he met the requirements of the renewal plan, Atchison placed him on probation for unsatisfactory progress under the plan. Fricke met with Atchison, on January 4, 2002, to discuss the probationary period and renewal plan. Atchison claims that Fricke attempted to intimidate her at this meeting and that she had been frightened and shocked. Fricke disputes this description of the meeting, claiming that he only told Atchison that he had been harassed by her and Sparks, and that he felt he had been emotionally raped by them.

On January 25, 2002, Fricke attended an electrical safety meeting. Dupont alleges that Fricke again exhibited unusual and inappropriate behavior during this meeting. As a result of Fricke's inappropriate behavior, Barbara Jones, Human Resources Manager, and Brenda Kelsey, Human Resources Specialist, escorted Fricke to the medical division of the plant and referred him to an Employee Assistant Consultant to receive an appointment for an evaluation and counseling. Fricke was then placed on a leave of absence, and Dupont called a taxi to take him home. Fricke

disputes that his behavior was inappropriate during the January 25 meeting, and claims that he was removed from the premises under false pretenses.

While absent from employment Fricke received short-term disability and visited medical professionals. Because Fricke's short-term disability would expire at the end of July, Dupont met with him on June 27, 2002, to advise him of his options. Dupont advised Fricke that he had not been released to return to work, and that one of his options was disability retirement with pension benefits. Fricke argues that "[e]very health care professional said [he] was fit for duty" and able to return to work. However, Fricke does not cite the court to this in the record.

Fricke claims that after "all avenues for returning to work had been exhausted" he determined to take the disability retirement and began the application process. Fricke then signed a medical authorization to grant Dupont's medical department permission to assist him with his application. A determination was made by Aetna, Dupont's designated third-party administrator, that Fricke qualified for "Incap" benefits, meaning that he was incapable of performing work at Dupont. Fricke's retirement became effective July 31, 2002 and he began receiving pension benefits [in] August 2002.

*Id.*; J.A. 39-41.

**Standard of Review**

This Court will review a district court's grant of summary judgment *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although the Court will draw all reasonable inferences in favor of the non-moving party, *see*, *e.g.*, *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)), "[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Smith*, 129 F.3d at 863.

**Discussion**

In *McDonnell Douglas*, 411 U.S. at 802, the Supreme Court adopted a burden-shifting analysis for employment discrimination claims. The plaintiff must first establish a prima facie case of discrimination. A plaintiff may establish a prima facie case either by showing direct evidence of discriminatory intent, or by showing (1) that he is a member of the protected class; (2) that he was denied opportunities or experienced an adverse employment action; (3) that he was otherwise qualified for the position; and (4) that he was replaced by a person outside of the protected class or other individuals outside the protected class received more favorable treatment. *See Gagné v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 313 (6th Cir. 1989); *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993). If the plaintiff proves the prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). The plaintiff must then establish by a preponderance of the evidence that the defendant's proffered reason for the employment action was a pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Here, the district court ruled that Dupont did not take adverse employment action against Fricke, and so the latter could not establish a prima facie case for age discrimination under the ADEA. Since Kentucky's Civil Rights Law is modeled after federal law, the court held that Fricke also failed to meet his burden under state law. Finally, because the ADA also requires plaintiff to prove adverse employment action, the court ruled that plaintiff could not establish a prima facie case

for disability discrimination either. Fricke appeals the district court's finding, and this Court will review, *de novo*, whether summary judgment in favor of Defendant is appropriate under the *McDonnell Douglas* burden-shifting test. For the reasons enumerated herein, this Court affirms the district court's ruling, but on different grounds.

## A. Plaintiff Cannot Establish a Prima Facie Case

Fricke argues that a prima facie case for employment discrimination exists, based on both direct evidence of discrimination and the four-part indirect discrimination analysis. As discussed below, this Court finds that summary judgment in favor of Dupont was appropriate because Fricke is unable to show direct discrimination on the part of Dupont; Fricke was not replaced by a person outside of his protected class; and Fricke was neither "disabled" nor regarded as "disabled" by Dupont as defined by the ADA.

### 1. There Is No Direct Evidence of Discriminatory Intent

Workplace comments that refer to age are not necessarily evidence of intentional age discrimination. First, the comments must have been made by someone who has some authority over whether the employer will take adverse employment action against the employee. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998). Additionally, the comments must not be merely the result of a personality conflict among employees. *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982). "Personality conflicts alone cannot supply a basis for an ADEA claim. '(An) employer may make a subjective judgment to discharge an employee for any

reason that is not discriminatory.'" *Id.* at 70 (internal citation omitted). "Although . . . a direct nexus between the allegedly discriminatory remarks and the challenged employment action affects the remark's probative value, the absence of a direct nexus does not necessarily render a discriminatory remark irrelevant." *Ercegovich*, 154 F.3d at 355-56 (finding discriminatory animus in the supervisor's statements that "this company is being run by white haired old men waiting to retire, and this has to change" and the supervisor does "not want any employee over 50 years old on his staff").

In seeking to establish discriminatory intent, Fricke claims that the "smoking guns" in this case were allegedly discriminatory comments made by Sparks and Atchison, his supervisors at Dupont. Pl.'s Br. at 13. Sparks and Atchison, although serving in a supervisory capacity over Plaintiff, were not part of the decision-making process that resulted in the change of Fricke's employment status. Sparks, for one, was not Fricke's supervisor when any action on Fricke's employment status was taken, beyond Fricke's placement on the performance improvement plan. Atchison had taken over by the time Fricke was placed on leave and while he was deemed unable to return to work. J.A. 532. Neither Sparks nor Atchison were involved in the decision to put Fricke on leave or the determination that Fricke was unable to return to work. J.A. 105, 108, 113. While it was Atchison who initially complained that Fricke acted erratically during a meeting, it was Pat Nolan, from Dupont's medical department, that recommended Fricke go home to take time off of work. J.A. 865-68. It was then members of Dupont's human resources department that escorted Fricke off the premises; Atchison was not involved. *Id.* As for the determination that Plaintiff not return to work, Dr. Pamela Stein, a doctor having no relation to Dupont, initially recommended that

if Fricke were to return to work, he could do so only on a limited basis until he was "free from the stress of his previous work environment," which included an unresolved sexual harassment claim between Fricke and Atchison. Dr. Stein could not "predict how Mr. Fricke might behave under" previous working conditions, and she anticipated "increased anxiety, hypervigilance, agitation, and despondency." J.A. 117. Based on this report, Dupont decided not to invite Plaintiff back to work at that point. In other words, Dupont's decision not to return Fricke to work was based on its interpretation of a letter from a clinical psychologist, not on Fricke's age. Further, Dupont did not shut Fricke out completely. Dupont referred him to the company's group benefits plan, which awarded him "incap" benefits and a retirement plan. *See Ackerman*, 670 F.2d at 71 ("While discharge without compensation is obviously undesirable, retirement on an adequate pension is generally regarded with favor.") (citations omitted).

### 2. Circumstantial Evidence of Discrimination: Plaintiff Was Not Replaced By an Individual Outside of the Protected Class.

One element of establishing a prima facie case of discrimination is that the claimant must show that he was replaced by a person outside of the protected class, or that other individuals outside the protected class received more favorable treatment. *See Phelps*, 986 F.2d at 1023. Plaintiff has not demonstrated that he was replaced by another individual, let alone one who was under the age of 40. While Plaintiff's Reply Brief contains a cursory allegation that he was "replaced in his job by Tom Boyle as the electrical distribution manager," Fricke does not cite any evidence in the record that either Tom Boyle actually replaced Fricke, as this Court has required in *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1117 n.1 (6th Cir.1980), or that Tom Boyle was under the age of 40. Pl.'s

Reply Br. at 18. Both components are necessary in order to establish a prima facie case of employment discrimination. Neither does Fricke set forth any support for the proposition that other, younger employees were treated more favorably than he.

Dupont, on the other hand, asserts that Fricke was not replaced by another employee, but rather that "[s]everal other employees assumed the duties of Fricke's former position," and that no other applicants for Fricke's former position were thereafter sought, citing to the record for these propositions. Def.'s Br. at 42-43, J.A. 106, 443-44. *See Kesselring v. United Technologies Corp.*, 753 F. Supp. 1359, 1364 (S.D. Ohio 1991) ("[A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employers [sic] already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."). Fricke therefore has not shown that he was replaced by an individual under the age of 40, and therefore he cannot establish a prima facie case of age discrimination.

### 3. Plaintiff Is Not "Disabled"

Finally, in considering Plaintiff's claim for employment discrimination based on disability, this Court, in affirming the district court, concludes that Fricke is unable to show that he is "disabled" for purposes of an ADA discrimination claim.

To be "disabled" under the ADA, an individual must (1) have a physical or mental impairment which "substantially limits" him or her in at least one "major life activity," (2) have a record of such an impairment, or (3) be regarded by the employer as having such an impairment. 42

U.S.C. § 12102(2).

"Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2 (i). "Substantially limits" refers to being

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). Further,

> (3) With respect to the major life activity of working--
>
> > (i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3).

Personality conflicts, workplace stress, and being unable to work with a particular person or persons do not rise to the level of a "disability" or inability to work for purposes of the ADA. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524-25 (7th Cir. 1996) ("The major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance.") (citing *Palmer v. Circuit Court of Cook County, Social Service Dept.*, 905 F. Supp. 499, 507 (N.D. Ill. 1995) ("Courts have uniformly rejected the notion that inability to work at a particular position renders a person disabled under the ADA.")). Here, personality conflicts and problems with regard to Fricke's specific

position and co-workers are all that the record supports.

The Supreme Court has laid out two ways in which an individual can be "regarded as" having a disability and fall into the latter of these categories. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). First, an employer can be under the mistaken belief that the employee is disabled, when in fact he is not. *Id.* Second, the employee can actually have a physical impairment, and the employer can know it, but the employer mistakenly believes that the employee is disabled because of the impairment when in fact he is not. *Id.*; *see also E.E.O.C. v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 443 (6th Cir. 2006).

Fricke cannot argue that he was actually disabled. Both parties acknowledge that Fricke was diagnosed with psychological conditions ("adjustment disorder, anxiety[,] and depression"), Pl.'s Reply Br. at 12-13, Def.'s Br. at 30, but Fricke maintains that, with medication, he remained able and willing to work. Instead, Fricke argues that he was regarded as having a disability. Fricke argues that his supervisors demonstrated that they considered him to be disabled by taking the following actions: (1) by alleging that his bizarre behavior at a meeting rendered him unable to return to the workplace, his supervisors admitted that they considered him unable to work; (2) by alleging that he had trouble "communicating," his supervisors admitted that they considered him unable to speak; (3) by allegedly terminating Fricke's employment, his supervisors admitted that they considered him unable to learn. These arguments are inconsistent with the ADA, and cannot survive summary judgment.

As discussed above, Dupont maintains, with strong support in the record, that Fricke was withheld from his job because of temperament and personality conflicts between other employees

and him, and because he did not receive a medical release to return to work. That Dupont removed Fricke from its offices after he engaged in offensive behavior at a meeting does not constitute an admission that Dupont considered Fricke to be unable to work in the sense that the ADA defines "unable to work." Dupont was not acknowledging that Fricke lacked the ability "to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *See* 29 C.F.R. § 1630.2(j)(3)(i). Rather, Dupont's removal of Fricke from its premises was due to bizarre behavior at a meeting and personality conflicts with other employees. Dupont concluded that Fricke was unable to work with the particular employees and in his particular position at the company, not that he was unable to work at all in a broad range of jobs. In other words, the employer did not regard the employee as disabled, but merely as incompatible with the demands of his *specific* position. That Dupont considered Fricke unable to "communicate" was likewise a reference to personality conflicts, not to a perceived inability to actually speak. Finally, there is no support for the allegation that Fricke's alleged termination reflected a perception on his employer's part that he was unable to learn.

There is no evidence supporting Fricke's argument that Dupont terminated him because it considered him disabled. Therefore, this Court finds that Fricke is unable to survive summary judgment on his claim of disability discrimination.

### Conclusion

For the reasons discussed herein, we AFFIRM the district court's grant of summary judgment in favor of Defendant-Appellee Dupont.