NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0008n.06

Case No. 24-3379

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 10, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| DAVID O. SIMON, Chapter 7 Trustee for the Bankruptcy Estate of Yazmin Torres-Duqum, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| UNIVERSITY HOSPITALS CLEVELAND MEDICAL CENTER, | ) ) ) | |
| Defendant-Appellee. | ) ) | O P I N I O N |

BEFORE: COLE, WHITE, and DAVIS, Circuit Judges.

COLE, Circuit Judge. Yazmin Torres-Duqum ("Torres") was employed by University Hospitals Cleveland Medical Center ("University Hospitals") as a physical therapist. Following a miscarriage, Torres—suffering from PTSD, anxiety, and depression—requested to transfer to a position at another University Hospitals location. University Hospitals did not accommodate her request. Eventually, Torres filed for bankruptcy, and the trustee of her estate sued University Hospitals, alleging violations of Ohio law and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* The trustee stipulated to the dismissal of the claims under Ohio law. After the parties filed cross-motions for summary judgment, the district court granted summary judgment in favor of University Hospitals on the ADA claims. We conclude the district court erred by limiting its analysis to the major life activity of working, so we reverse the district court's judgment on the failure to accommodate claim under the ADA.

I.

In May 2011, Torres began working as a licensed physical therapist for University Hospitals. From 2014 until taking medical leave in February 2016, Torres worked at the University Hospitals Rehabilitation Sports Medicine Mandel Jewish Community Center ("JCC") location in Beachwood, Ohio. Torres had a history of post-traumatic stress disorder ("PTSD"), depression, and anxiety caused by the premature birth and loss of her son in 2006. On February 10, 2016, Torres suffered a miscarriage. The miscarriage triggered Torres's anxiety and PTSD, causing her to suffer from panic attacks. She requested leave under the Family and Medical Leave Act ("FMLA"), which University Hospitals granted. She had not informed University Hospitals or her supervisor of her pregnancy and did not immediately inform them of her subsequent miscarriage.

Torres told two JCC coworkers and a former JCC coworker about the miscarriage a few days later. That weekend some of her coworkers and her former coworker gathered for dinner outside of work hours. The former coworker reached out to Torres to inform her that her coworkers were speculating about her absence from work. Specifically, the group speculated that Torres had called off work to attend her child's gymnastics meet that weekend, not for an emergency, and spread rumors about her medical history and pregnancy.

Because her coworkers' gossip was causing her anxiety and PTSD to spiral, Torres reached out to her supervisor shortly after the weekend work event. She informed her supervisor of the miscarriage and asked him to transfer her to a different work location because "he was not stopping anything from the rumors and stuff from happening." (Torres Dep., R. 43-1, PageID 959.) According to her supervisor, Torres expressed that she could no longer work at the JCC location

and needed to be transferred because of "the people and the environment in the JCC." (Tekavec Dep., R. 42-1, PageID 794.)

Over the following months, Torres's well-being generally improved, and her anxiety and depression were managed through therapy and medication. But she still suffered from panic and anxiety attacks when she thought about returning to the JCC location. Accordingly, Torres began applying to open positions at other University Hospitals sites. In May 2016, Torres spoke with Lisa Edgehouse, the University Hospitals employee who coordinated FMLA leave and gathered information related to employees' medical restrictions. Torres notified Edgehouse that she never received the ADA paperwork she requested. After Torres received the paperwork, her medical provider submitted an ADA request in June 2016 asking that Torres transfer work locations. Later that same month, University Hospitals denied her request. An administrator testified that University Hospitals—as a general policy—does not transfer employees to available positions as an accommodation.

Torres's approved leave ended July 1, 2016. When Torres still had not returned to work on July 15, 2016, University Hospitals told Torres it would terminate her employment "due to job abandonment effective July 29, 2016," if she did not submit "paperwork . . . that would support [her] continued absence from work" by July 25, 2016. (Edgehouse Dep., R. 50-4, PageID 1372.) Torres responded by email on July 21. And she submitted an updated return-to-work authorization that said that she was "[u]nable to return to [the] JCC location." (*Id.* at PageID 1374.) In response, University Hospitals told Torres that she had no more job-protected FMLA leave (during which University Hospitals would leave her position unfilled) remaining, but that she could remain "in medical leave status." (*Id.*)

Torres continued applying to open positions and eventually secured another job at a different University Hospitals location in December 2016. The parties dispute whether Torres ever worked in this position. And Torres secured another position at a different University Hospitals location in August 2017. (Torres Dep., R. 43-1, PageID 913.) She eventually left that position in December 2017 because she did not get additional hours. (*Id.*)

In May 2018, Torres filed for bankruptcy protection, and a trustee was appointed to manage her bankruptcy estate. In May 2020, the trustee filed this action, alleging four counts against University Hospitals: (1) disability discrimination under Ohio Revised Code Chapter 4112; (2) disability discrimination under the ADA; (3) retaliation under Ohio Revised Code Chapter 4112; and (4) retaliation under the ADA.[1]

In September 2021, Plaintiff stipulated to the dismissal of the first and third claims—both claims under Ohio law without prejudice. The district court approved the stipulation. Following the close of discovery, Plaintiff moved for partial summary judgment, limiting his request to count two of the complaint, failure to accommodate under the ADA. University Hospitals moved for summary judgment on both remaining ADA claims.

The district court granted University Hospitals' summary judgment motion, denied Plaintiff's summary judgment motion, and dismissed the case with prejudice. Plaintiff now appeals.

II.

We review a grant of summary judgment de novo. *Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022). A district court may grant summary judgment only when there is no genuine

---

[1] Since the initial trustee filed suit, trusteeship over Torres's bankruptcy estate changed multiple times. (*See* Notice of Substitution, R. 24, PageID 125; Order, R. 69, PageID 1695.) The changes in trusteeship are irrelevant to this action. For ease of reference, we use "Plaintiff" rather than referring to the trustee by name.

dispute of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Generally, we view the evidence in the light most favorable to the nonmoving party and decline to assess the evidence's credibility or weight during this stage in the proceedings. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018) (citing *Henschel v. Clare Cnty. Rd. Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013), and *Rorrer v. City of Snow*, 743 F.3d 1025, 1038 (6th Cir. 2014)).

## III.

Plaintiff appeals the district court's grant of summary judgment regarding only the claim for failure to accommodate under the ADA. The ADA prohibits covered entities from, among other things, engaging in employment discrimination against "qualified individual[s]" because of a disability. 42 U.S.C. § 12112(a). The ADA's definition of discrimination includes "an employer's failure to grant a reasonable accommodation to a disabled employee." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020).

"In failure to accommodate cases, the plaintiff bears the initial burden of making out a prima facie case. If the plaintiff makes this showing, then the burden shifts to the employer to show that the accommodation would cause undue hardship for the employer." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022) (citations omitted). To establish a prima facie claim for failure to accommodate under the ADA, Torres must show that: (1) she has a disability within the meaning of the ADA; (2) she was "otherwise qualified" for her job, "with or without reasonable accommodation"; (3) University Hospitals "knew or had reason to know about her disability"; (4) "she requested an accommodation"; and (5) University Hospitals "failed to provide the necessary accommodation." *Id.* (quoting *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 669 (6th Cir. 2020)).

The district court granted summary judgment in favor of University Hospitals, reasoning that the failure to accommodate claim failed because Plaintiff did not raise a genuine dispute of material fact as to whether Torres qualified as "disabled" within the meaning of the ADA. Therefore, at issue on appeal is the first element of Torres's failure to accommodate claim— whether Torres has a disability within the meaning of the ADA.

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, . . . eating, sleeping, . . . concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). We construe the definition of disability broadly. *Id.* at § 12102(4)(A).

An impairment that is episodic falls within the definition of disability "if it would substantially limit a major life activity when active." *Id.* at § 12102(4)(D). In *Hostettler*, this court considered whether a person who suffered from postpartum depression and separation anxiety, manifesting in panic attacks that lasted for several minutes, was disabled under the ADA. 895 F.3d at 853–54. We reasoned that because she "was substantially limited in her ability to care for herself, sleep, walk, or speak" when she was experiencing her depression and anxiety, the episodic nature of her panic attacks did not preclude us from finding that she was disabled. *Id.* at 854.

Here, the district court concluded that "'working' at the JCC was the only alleged major life activity that was limited by Torres'[s] asserted disability." (Op. and Order, R. 62, PageID 1639.) Analyzing the major life activity of "working," the district court correctly concluded that Plaintiff failed to demonstrate that Torres's impairment limited her "ability to perform a class or broad range of jobs." (*Id.*) Plaintiff contends that the district court erred by failing to analyze Torres's limitations regarding other major life activities. We agree.

The district court acknowledged that, immediately following the miscarriage, "Torres was limited in one or more major life activities." (*Id*.) But because Torres's medical provider largely failed to detail the major life activities outside of working impacted by her disability in her University Hospitals leave-and-accommodation-request paperwork, the district court concluded that, by the time Torres requested an accommodation, the only limitation she asserted was not returning to work at the JCC. (*Id.*) On the request paperwork, Torres's provider checked the box indicating that Torres had a "disability that substantially limits one or more major life activities." (Pl.'s Mot. for Partial Summ. J., R. 44-6, PageID 1183, 86, 89.) The provider described the disability—anxiety and panic attacks—but her description of the way Torre's disability limits major life activities was somewhat cursory. For example, she indicated that the disability "limits [Torres's] focus," and said that Torres needs to be able to "think clearly" to do her job. (*Id.* at 1183.) And she added that Torres "works with patients and that requires concentration and supervision (of others) that she is currently struggling with—with her ongoing panic disorder" and that "[Torres] does not feel able to function in her present environment at the high level she is used to." (*Id.* at 1183, 89.)

This paperwork is not dispositive of Torres's failure to accommodate claim. Our review of the record shows that Plaintiff asserted limitations on Torres's major life activities other than working. Like the plaintiff's panic attacks in *Hostettler*, Torres's panic attacks are episodic in nature. Accordingly, we must consider whether the panic attacks "would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

Plaintiff alleged that Torres's PTSD and depression "substantially limit . . . her major life activities, including . . . working, interacting with others, concentrating, thinking, caring for herself and her children, sleeping, eating[,] and performing routine daily tasks." (Compl., R. 1,

PageID 4, ¶ 18.) Torres attested that when her condition "flares up," her major life activities of "working, thinking, concentrating, caring for [herself], and interacting with others" are substantially limited. (Torres Aff., R. 44-1, PageID 1078.) She recounted that, following her miscarriage, she could not sleep, "function," or care for her children. (Torres Dep., R. 43-1, PageID 941.) And she stated that she continued to suffer from panic attacks when she thought about returning to work at the JCC.

University Hospitals did not refute these allegations, and in reviewing a grant of summary judgment, we generally do not weigh the evidence or assess its credibility. *See Hostettler*, 895 F.3d at 852. Therefore, the district court erred by limiting its analysis to only the major life activity of working and failing to consider Torres's limitations on her other stated major life activities.

As relevant here, University Hospitals argues on appeal that Torres is not disabled because a personality conflict is not a disability for the purposes of the ADA. This argument does not persuade because, like the district court, University Hospitals limits its analysis to the major life activity of working. True, mere personality conflicts and similar workplace stress issues are not, on their own, substantial limitations on the major life activity of *working*. *See Fricke v. E.I. Dupont Co.*, 219 F. App'x 384, 389 (6th Cir. 2007) ("Personality conflicts, workplace stress, and being unable to work with a particular person or persons do not rise to the level of a 'disability' or inability to work for purposes of the ADA."). But as discussed above, the district court erred by not analyzing the asserted limitations on Torres's major life activities other than working. Moreover, Torres testified that the building itself, not just specific coworkers, triggered debilitating anxiety. This argument therefore does not change our analysis.

In the alternative, University Hospitals argues that, even if we conclude Torres has a disability, summary judgment was appropriate because her requested accommodation was

unreasonable and would cause undue hardship to University Hospitals. The district court found that Plaintiff failed to make out a prima facie case and ended its analysis with the first prong of a failure to accommodate claim—whether Torres has a disability within the meaning of the ADA. The district court, therefore, did not consider the reasonableness or undue hardship arguments in the first instance, and we see no exceptional reason why we should reach those issues here. *See St. Marys Foundry, Inc. v. Emps. Ins. of Wausau*, 332 F.3d 989, 995–96 (6th Cir. 2003).

## IV.

For the foregoing reasons, we reverse the district court's grant of summary judgment to University Hospitals on the failure to accommodate claim and remand this claim for further proceedings consistent with this opinion.